# CASES

IN THE

# SUPREME COURT OF ALABAMA.

DECEMBER TERM, 1878.

## Toney *v.* State.

*Indictment for Keeping, or Exhibiting a Gaming Table.*

1. *" Table for gaming;" what constitutes.*—Any table kept and used for gaming, is " a table for gaming," within the meaning of the statute (Code, ? 4208), though it has no peculiar devices or appliances, and is not necessarily used in playing any particular game.

APPEAL from City Court of Montgomery.
Tried before Hon. JOHN A. MINNIS.

The appellant, Toney, was convicted under an indictment which charged that he kept or exhibited a gaming table for gaming, or was interested or concerned in the keeping or exhibiting thereof. Sam Tyson, a witness for the State, testified that within twelve months before the finding of the indictment, the defendant was the proprietor of a cellar or room, located under a building in the city of Montgomery, and that he kept said room or cellar for the purposes of gaming; that in said room he kept an ordinary pine table, upon which the game of " chuckeluck " was played, and that said game was played as follows: " Six cards were laid upon the table, of denomination, ace, duce, tray, four, five and six of diamonds, or any other suit that might be selected from the pack; that three dice were thrown from a dice box, and if the number on the dice thrown corresponded with the card bet on, the player would win; if, however, the dice did

(1)

not, he would lose, and the wager would go to the defendant; that there were no devices or figures of any kind marked on the table, which was covered with an ordinary cloth, having no devices or figures on it, and that the game could have been played as well without, as with a table, and that said table was not necessary to the game in question."

Joe Rainey, another witness for the State, testified in substance the same as the foregoing witness, with the exception that he stated that he never saw in said room any table other than one formed by two pine boards nailed across the end of an upright stick, and another formed by two rough planks placed against and supported by the two corners of the room; and that he frequently visited said room. He further testified that defendant kept watermelons in said cellar for sale.

This was all the evidence, and the court, at the request of the solicitor, charged the jury, if they believed all the evidence beyond a reasonable doubt, they must find the defendant guilty as charged; and the defendant excepted. The defendant then requested, in writing, the following charges:

1. "In order to find the defendant guilty the jury must believe from the evidence, beyond a reasonable doubt, that the defendant kept or exhibited a gaming table for gaming, or that he was interested or concerned in the keeping or exhibiting thereof; and the evidence must further show, beyond a reasonable doubt, that the table was of such a character or kind as to form a part of the game played thereon, or for which it was kept or exhibited, and that it was an essential part of the game.

2. "Unless the evidence shows that defendant kept or exhibited, or was interested or concerned in the keeping or exhibition of a gaming table for gaming, of such a character as to form an essential part of the game for which it was kept or exhibited, then the jury must find the defendant not guilty.

3. "If the evidence only shows that the table with which the defendant is charged with keeping or exhibiting was an ordinary pine top table, or was composed of two or three rough boards set up in a horizontal position, and in no wise connected with or forming an element of the game played thereon, or of any game for which it was kept or exhibited, then the jury must acquit.

4. "If the jury believe the evidence they must find the defendant not guilty."

The court refused these charges, and the defendant duly excepted.

[Toney v. State.]

The charge given, and the refusal to charge as requested, are now assigned as error.

JOHN GINDRAT WINTER, for appellant.—The record raises the question whether a table which forms no part of the game played, and which is not an element or ingredient of the game, is the kind of table prohibited by the statute. Section 4207 of the Code forbids the playing of any game with cards, &c., at any of the places mentioned, and subsequent sections forbid betting at any of the games prohibited by this section, or at any gaming table prohibited by section 4208. It will be seen that each and all of these statutes draw the distinction between the ordinary betting or playing at cards and a gaming table; hence it may well be inferred that this distinction was purposely drawn. If betting at cards or dice, or renting a room for gaming purposes, would include renting for the purpose of exhibiting a gaming table, why insert the clause with reference to gaming tables? The legislature must have had reference to a peculiar kind of table, when it so frequently draws the distinction between ordinary betting with cards, and exhibiting a gaming table. The penalty for the different offences is different, and it seems the evident intent of the law to make a distinction.

H. C. TOMPKINS, Attorney-General, contra.—The statute denounces as a crime the being interested or concerned in the keeping or exhibiting any table for gaming.

The gambling here, necessarily required the use of the table or something in the place of it. The law does not say that the table shall be an essential part of the game; it denounces the keeping of a table for gaming. Perhaps there is not a single game played with a table but what could also be played on a floor or even on the ground. The court neither erred in giving the charge asked by the State, nor in refusing the charges asked.—See Miller v. State, 48 Ala. 122.

BRICKELL, C. J.—The offence denounced by the statute under which the indictment was found, is the keeping or exhibiting, or being interested or concerned in keeping or exhibiting any table for gaming, of whatsoever name, kind, or description, not regularly licensed under the laws of this State.—Code of 1876, § 4208. It is not a gaming table, if there be such, as distinguished from other tables, that alone falls within the prohibition of the statute. Nor is the char-

acter of the table, whether it contains devices, or any appliances, adapted and essential to particular gaming, an element of the offence. It is the *use* to which the table is appropriated, and the absence of a license under the laws of the State for that *use*, which renders the keeping or exhibition, or concern or interest in its keeping or exhibition, indictable. It may be that the particular table, or substitute for a table, kept and exhibited by the appellant was not a part of, or essential to the playing of *chuckeluck;* but if the defendant kept and exhibited it for use in the playing of that game, he was guilty as charged.

The statute is very general in its terms, and so of necessity, to meet and suppress the evil against which it is directed. Former statutes had descended to particulars, as tables for *faro, roulette,* &c., not meeting all the technicalities of the professional gamester; or slight changes in the names, or in the mode of playing games, were resorted to, and some times successfully, for the purpose of evading them. Under the present statute, the only inquiry for the court and jury, is, into the *use* for which the table is kept or exhibited. If that be gaming, the statute is violated, unless a license is shown.

There was no error in the rulings of the City Court, and its judgment is affirmed.

