# Bibb *v.* State.

*Indictment for Keeping Gaming-Table.*

1. *Sufficiency of indictment; averment of time.*—An indictment for keeping a gaming-table, found since the offense was made a felony (Code, § 4208; Sess. Acts 1886-7, p. 142), must aver or show that the offense was committed since the new law became operative.

2. *Same; exception as to licensed table.*—The form of indictment prescribed for the offense when it was a misdemeanor only (Code, p. 994, Form No. 28), is sufficient under the new statute, with an additional averment of the time; and it is not necessary to aver that the table was not licensed, that being matter of defense.

3. *Offense committed under repealed statute.*—The former statute, which made the offense a misdemeanor only, remains in force as to all offenses committed before the new law became operative (Code of 1886, §§ 10, 3706); and a prosecution under it may still be maintained for such offense.

4. *Proof of plea of guilty, on prosecution for violation of municipal ordinance.*—The defendant having been prosecuted for the violation of a municipal ordinance against the keeping of a gaming-house or gaming-table, and having pleaded guilty to the charge, proof of this fact is relevant and competent evidence on a subsequent prosecution for a violation of the statute, when it is further shown that his plea was accompanied with an oral statement that he had kept a gaming-table since the enactment of the statute making it a felony.

5. *Keeping gaming-table; constituents of offense, and proof thereof.*—The offense of keeping a gaming-table may be continuous in its nature, or may be consummated by a single act, without engaging in the business; and as showing the commission of the offense, a witness for the prosecution may state that, on several occasions, he heard "the rattling of chips," such as are used in playing the game of poker, in the room occupied by the defendant, accompanied, on one occasion, with words indicative of a purpose or offer to bet money.

6. *Same; use of table.*—If the table was used for gaming purposes, it matters not where it was kept, whether in a public or a private place, nor for what other purpose it was also used; and therefore it is not permissible for the defendant to prove that the table was in his private bed-room, and was used by him for domestic purposes.

7. *Same; punishment; repugnant statutes in Code.*—The statute which makes the keeping of a gaming-table a felony (Code of 1886, § 4055), being of later date than the statute regulating punishments generally (§ 4492), must control it so far as the two are inconsistent or repugnant; and while it imposes on the jury the duty of assessing the fine, it requires the court to impose imprisonment also.

8. *General charge on evidence.*—When the bill of exceptions purports to set out, not all the evidence, but what the evidence *tended* to prove, justifying conflicting inferences by the jury, the court is not authorized to give a general charge in favor of the State.

From the City Court of Montgomery.

Tried before the Hon. Thos. M. Arrington.

The indictment in this case was found on the 15th July,

1887, and contained but a single count, which charged that the defendant, "before the finding of this indictment, kept or exhibited a gaming-table for gaming, or was interested or concerned in the keeping or exhibition thereof; against the peace," &c. The defendant demurred to the indictment, and the court overruled the demurrer; but the record does not show what grounds of demurrer were specifically assigned. The defendant then pleaded not guilty, and issue was joined on that plea. On the trial, as the bill of exceptions shows, the court charged the jury, on request of the solicitor, that they must find the defendant guilty, if they believed the evidence; and further: "If the jury find the defendant guilty, they must assess a fine of not less than one hundred, nor more than five hundred dollars, in their discretion; and that is all they have to do, so far as the punishment is concerned." To each of these charges the defendant excepted. The jury returned a verdict in these words: "We, the jury, find the defendant guilty, and assess the fine at one hundred dollars." On this verdict, the defendant moved that he be allowed to confess judgment for the fine and costs, and that he thereupon be discharged from custody; and he also moved in arrest of judgment, on account of the insufficiency of the verdict, and also on account of defects in the indictment. The court overruled each of these motions, and rendered judgment against the defendant for the amount of the fine and costs, and also sentenced him to the penitentiary for the term of six months.

The bill of exceptions states, in one place, that it contains "all the evidence;" but it further states, in several places, what the evidence "tended to prove," and, among other things, the following: "The evidence tended to show that, on the night of June 26th, 1887, the defendant was in a certain room in the third story of a building on Dexter Avenue in the city of Montgomery, when Capt. Martin, of the police force, with several policemen, knocked at the door, and it was opened by the defendant; that when the police officers attempted to enter the room, the defendant tried to shut the door, but was prevented, and was informed that they had a warrant for his arrest; that he thereupon said he would not resist the law, and the police entered. The evidence further showed, also, that in said room was a table, such as is generally found in an office or bed-room, with no device of any kind thereon, and in no manner differing from an ordinary table; that four or five persons were seated around the table,

[Bibb v. State.]

with cards in their hands; that each one had before him *chips*, such as are used in playing *poker*, and near the table, next to the defendant's seat, was a stand, or small table, on which· was a rack containing chips, cards, and money; that one of the persons present requested the police to allow the *hand* to be played out, saying that he was *behind;* that the police refused, and thereupon each person at the table handed his checks to the defendant, and received from him money for them." Capt. Martin testified, also, that on several occasions, prior to the night in question, while on duty in the neighborhood, and watching the room, "he heard chips rattling," and once, while just outside of the door, he heard some one within say, "I'll raise you a dollar." The defendant objected and excepted to the admission of· each part of this evidence. The defendant offered to prove, in this connection, "that in said room was the furniture ordinarily found in a bed-room, and other utensils for cooking purposes; that it was his private bed-room at the time of his arrest, and had been so occupied by him for six or seven years before that time; that he had used it during all that time as his private bed-room, sleeping room, and cooking room, having had no other home during that time·; that the ordinary use of the said table was to hold his books and writing materials, and to eat his meals from." The court excluded each part of this evidence, on objection by the State, and the defendant duly excepted.

The State proved, also, that the defendant was arraigned in the Recorder's court on the morning after his arrest, charged with a violation of section ‑496 of the City Code; that he said, in reply to the charge: "I plead guilty, and wish to make a statement. When the legislature made it a felony to keep gaming-tables, I quit, and tried my best to get some other employment; but, failing in that, I commenced keeping a gaming-table again." The defendant duly objected and excepted to the admission of each part of this evidence. The section of the City Code referred to is in these words:‑ "Any person who keeps a gaming saloon, or house for gaming, or who keeps or has in his possession any table, cloth, box, or other device used for the purpose of gaming, must, on conviction, be fined not less than one, nor more than one hundred dollars."

There were numerous other exceptions reserved on the trial, but they require no special notice.

WATTS & SON, for the appellant.

THOS. N. MCCLELLAN, Attorney-General, for the State.

SOMERVILLE, J.—The indictment charges, omitting the formal parts, that the defendant "kept or exhibited a gaming-table for gaming, or was interested or concerned in the keeping or exhibition thereof."

1.　Section 4208 of the Code of 1876, before amendment, provided, that "any person who keeps, exhibits, or is interested or concerned in keeping or exhibiting any table for gaming, of whatever name, kind or description, not regularly licensed under the laws of this State, must, on conviction, be fined not less than one hundred, nor more than one thousand dollars; and may also be imprisoned in the county jail, or sentenced to hard labor for the county, for not more than twelve months."—Code, 1876, § 4208.

On February 10th, 1887, this section was amended, so as to expressly declare, that such person shall be guilty of a *felony*, and provided that, "on conviction thereof, (he) *must* be fined not less than one hundred, nor more than five hundred dollars, *and shall also be imprisoned in the penitentiary*, for not less than six months, nor more than two years; and on a second, or any subsequent conviction, shall be imprisoned in the penitentiary, for not less than two, nor more than five years."—Acts, 1886–87, p. 142.

It is observable, that the keeping of a gaming-table was, under section 4208 of the Code of 1876, only a *misdemeanor*, punishable by fine, and imprisonment in the county jail, or sentence to hard labor for the county. The amending act makes it *a felony*, punishing the offense, not only by fine, but by imprisonment in the penitentiary. A conviction of felony in this State—by which is meant any public offense which may be punished by death, or by confinement in the penitentiary—not only operates to terminate the right of the convict to execute the office of executor, administrator or guardian, and extinguish all private trusts not susceptible of delegation by him, but also disqualifies him from holding office, or exercising the privilege of the elective franchise. Code, 1876, § 4511; *Washington's case*, 75 Ala. 582. The two classes of crimes, therefore, misdemeanors and felonies, are signally distinguished, as to the nature of their punishment, and their legal effect upon the civil rights of the citizen.

[Bibb v. State.]

The indictment does not allege when the act charged was done. It does not show whether it was committed before the act of February 10th, 1887, was passed, or afterwards. It does not, therefore, make it apparent whether the accusation brought against the defendant is a *misdemeanor*, or a *felony*.

It is objected that this defect was fatal to the indictment; and we are of opinion that this point is well taken. In view of the fact that the indictment was found on July 15th, 1887, and the amendatory act, entirely changing the nature and punishment of the offense charged, was only enacted on February 10th, 1887—or about five months previous—the indictment should have stated *the time* when the offense was committed, or else have shown that it was after the date of the new law making it a felony. At common law, it was formerly necessary to aver the time when the crime was committed. It is provided by statute in this State, that it is unnecessary to state the precise time, but only that the offense charged was committed before the finding of the indictment, "unless time is a material *ingredient* of the offense."—Code, 1876, § 4788; Code, 1886, § 4373. This principle is broader than the more recent common-law rule, which provided, that the time of committing an offense need not be averred, except when it "entered into *the nature* of the offense," but might be laid on any day previous to the time of finding the bill, within the period in which it could be prosecuted before a bar under the statute of limitations. *Shelton v. State*, 1 St. & P. 208; Whart. Cr. Pl. & Pr. (8th Ed.), § 120. The crime of burglary, which was required to be committed at some hour of the night, and offenses against the Sunday law, were examples of this kind. But the statute, in our opinion, goes further than this. It makes the averment of time necessary, when it is an element which affects the guilt or innocence of the party charged, or the grade of the crime, at least within the period before the finding of the indictment when the crime could be prosecuted.

The reason of this is apparent. The accused has a constitutional right to "demand the nature and cause of the accusation" against him, and to "have a copy thereof."—Const. 1875, Art. I, § 7. The indictment is the written accusation in the prescribed constitutional form. Where the indictment is, on its face, so ambiguous as not to show whether it charges a misdemeanor or a felony, it is liable to the objection of

uncertainty, and does not conform to this requirement. It is not a copy of the real accusation against the defendant.

There is another test which seems equally fatal. If the defendant should plead guilty to this indictment, or the jury should find him guilty "as charged," how could the court look at the record and know what judgment to pronounce—whether to refer the verdict to the misdemeanor, or to the felony—whether to sentence the defendant under section 4208 of the Code, as it originally stood, or as amended by the new law of February, 1887? These reasons seem to us to be sufficient to render the indictment fatally defective.

The case of *State v. Wise*, 66 N. C., 120, is one in every respect analogous to the present one. The defendant there was indicted for burglary, and the indictment failed to state when the offense was committed. By a statute passed in 1869, this crime was punished by confinement in the *penitentiary*. By an amendatory act, which went into effect April 4th, 1871, it was made punishable by *death*. It was held by Chief-Justice Pearson, speaking for the whole court, that the indictment should have averred *the time* when the burglary was committed, so as to show on its face whether the punishment of confinement in the penitentiary, or of death, under the one or the other statute, should be assessed. In *McIntyre's case*, 55 Ala. 167, a principle was settled bearing in analogy upon this question. A law was passed and went into effect on the first of April, 1875, requiring a license from any person who engaged in "the business of taking pictures." It was held that an indictment found in July of that year, which was within less than twelve months from the passage of the act—the period of the statutory bar for the prosecution of misdemeanors—was fatally defective for failing to allege that the act was committed after the law went into effect. Otherwise it may have been so construed as to charge no offense.—1 Bish. Cr. Pro. (3d Ed.), § 404.

The case of *Harris v. The State*, 60 Ala. 50, is distinguishable from this case. The indictment there showed that it was found under the new statute, pursuing it strictly by averring a larceny of "a part of an outstanding crop of corn," the property of a named owner. So, in *Adams v. The State*, 60 Ala. 52, the averment of time was not regarded as necessary to remove the supposed ambiguity of the charge, as being either a misdemeanor or a felony, because at the time the indictment was found the misdemeanor was barred. Hence, the verdict of guilty necessarily referred to the fel-

[Bibb v. State.] ·

ony—grand larceny—which was not barred by limitation of time. A like remark may be made of *Harris' case, supra.* These rulings accord with the views of approved text-writers. 1 Bish. Crim. Pro. (3d Ed.), §§ 622, 404; 1 Chitty Crim. Law, 285.

For this imperfection in the indictment, the judgment must be reversed. In the event of a new trial, we think it necessary to decide such other questions raised by the record as may be pertinent to the issues likely again to arise.

2. As to the *form* of the indictment, our opinion is, that Form No. 28, prescribed by the Code of 1876, p. 994—designated as Form 54, Code of 1886, p. 373—is sufficient, if coupled with the proper averment as to the *time* when the offense was committed, showing that it was after the act of February 10th, 1887, went into effect, which could not be prior to thirty days after the adjournment of the last General Assembly, the act itself not specially providing otherwise. Code of 1886, §§ 3705, 4366, 4899. This form requires no averment that the table kept was not one licensed to be kept under the laws of the State. If such was the fact, it was mere matter of defense. Even in those cases where the forms of indictment are required to allege the non-existence of such excepted case, it does not devolve on the State to show that the defendant had no license, but on the defendant to show affirmatively that he had.—*Porter & Co. v. State,* 58 Ala. 66.

3. If the offense occurred previously to this time, it could still be prosecuted under section 4208 of the Code of 1876, as it existed prior to the amending act, that law still remaining in force as to all offenses committed before its revisal or amendment by the act of February, 1887.—Code of 1886, §§ 10, 3706; *Miles v. State,* 40 Ala. 39; *Miller v. State, Ib.* 54; *Stephen v. State, Ib.* 67; *Wade v. State, Ib.* 74; *Tempe v. State, Ib.* 350.

4. The defendant's plea of guilty, when he was arraigned for violation of the municipal ordinance of the city of Montgomery, set out in the record, was both relevant and competent evidence against him in this case. It is true this ordinance denounced two several offenses—the keeping of a gambling saloon or house, and the keeping in one's possession of any table, cloth, box or other device, used for the purpose of gaming. But this plea of guilty was accompanied at the time by an oral statement made by the defendant, in which he confessed that he had been engaged in keeping

a gaming-table since the enactment of the new law, making the offense a felony.   The Recorder's docket, and the affidavit and warrant in the case before that court, were properly admitted in connection with the ordinance.

5.   The offense of keeping a gaming-table may be committed by a single act, or it may be one continuous in its nature, and may, therefore, be proved by one act, or a series of acts, showing the requisite criminal intention, by the proper measure of proof.   The guilty party need not necessarily be engaged in *the business* of keeping such table, any more than one who keeps a restaurant, or keeps open store on Sunday contrary to law.—*Huttenstein's case*, 37 Ala. 157; *Dixon's case*, 76 Ala. 89.   For this reason, it was competent to show by the witness Martin, that he had heard on several occasions the "rattling of chips," such as are commonly used in playing the game of poker, going on in the room admitted to be occupied by the accused, and on one occasion, accompanying such sounds, words indicative of a proposal to bet money.   These facts were relevant to show that the defendant was guilty of the charge of keeping a gaming-table for gaming.

6.   Any table, kept and used for gaming, has been held by this court to be "a table for gaming," within the meaning of the statute.   The main inquiry for the court and jury, therefore, has reference to *the use* for which the table is kept or exhibited, for it is this use that characterizes its criminality.   *Toney v. State*, 61 Ala. 1; *Wren v. State*, 70 Ala. 1.   If the table so used for gaming, is kept or exhibited anywhere, not being regularly licensed under the laws of this State, such keeping or exhibition is a violation of the law—it matters not whether the place is public or private.   The statute is aimed at the evil of gaming, and no exception is made as to place.   A table for the use prohibited by the statute is no more allowed to be kept in the dark than in the open day, or in a private room than in a hotel, or a restaurant.   The evidence, therefore, offered by the defendant, which tended to show that the room, in which the table was alleged to be found, was his private bed-room, in which he slept and had his meals prepared, was entirely irrelevant.   Nor did it avail the defendant anything that this table was ordinarily used by him to eat his meals on, any more than a like excuse would avail a keeper of a pool or faro-table.   This evidence had no tendency to show that the

table in question was not used for gaming in violation of the statute.

7. The charges of the court raise an inquiry as to the punishment to be inflicted under the provisions of this law. On this point we think there can be no doubt. The violation of this law is declared to be *a felony*, and the penalty affixed is *not fine or imprisonment*, but *both the one and the other*. The language is, "shall be guilty of a felony, and, on conviction thereof, *must be fined* not less than one hundred, nor more than five hundred dollars, and *shall also be imprisoned in the penitentiary*, for not less than six months, nor more than two years," &c. Acts, 1886–7, p. 142. The case is not one of an offense which *may* be punished by imprisonment in addition to a fine, and where the jury have a discretion as to whether or not this penalty shall be assessed. Code, 1886, § 499. It is one where it is imperative, by the mandate of the statute itself, that the jury must, without discretion except as to the amount, impose a fine within the prescribed limits; and the court *must* also sentence the defendant, when found guilty, to imprisonment in the penitentiary, for not less than six months, nor more than two years.

8. The statute of February 10th, 1887, being more recent than the new Code, and as to this particular offense repugnant to the provisions of section 4492, is not governed by that section specifying the legal punishments fixed by the general law, and regulating the mode of their imposition. In this case, the fine was properly assessed by the jury, and the imprisonment by the court. Code, 1886, §§ 4494, 4499; Acts, 1887, p. 142.

9. The bill of exceptions only purports, in some parts of it, to set out what the evidence *tended* to prove—not all the facts as testified to bearing on the defendant's guilt. It is proper to say that it did not, on this account, justify the giving of the general affirmative charge in favor of the State, leaving, as the evidence did, conflicting inferences to be drawn by the jury.

The judgment is reversed, and the cause remanded. The defendant will, in the meanwhile, be held in custody until discharged by due process of law.