COMMONWEALTH *vs.* CHARLES LANIDES.
SAME *vs.* WILLIAM LANIDES.

Worcester.  March 31, 1921. — May 28, 1921.

Present: RUGG, C. J., DE COURCY, PIERCE, CARROLL, & JENNEY, JJ.

*Intoxicating Liquors.  Jamaica Ginger.*

At the trial in the Superior Court of a complaint for unlawfully exposing and keeping for sale intoxicating liquor without authority, where the alleged intoxicating liquor was Jamaica ginger having an alcoholic content of more than ninety-one per cent and it was admitted that the defendant kept it with intent to sell it, the question, whether the preparation was a beverage, was for the jury and evidence tending to show that the preparation was used extensively for beverage purposes and was intoxicating was admissible and warranted a conviction although the preparation was called a medicine and was used by many for medicinal purposes.

If, upon a complaint for violation of R. L. c. 100, §§ 1, 2, it appears that the defendant kept for sale intoxicating beverages or any preparation which, although commonly used as a household remedy, was intoxicating and was used to such an extent for drinking that a jury could say it was a beverage, the defendant's intent in making the sale is immaterial.

St. 1910, c. 172, is no defence to the complaint above described if the evidence warrants a finding, and the jury find, that Jamaica ginger is an intoxicating beverage.

St. 1910, c. 172, did not authorize in any way the sale of intoxicating beverages.

TWO COMPLAINTS received and sworn to in the Police Court of Fitchburg on October 7, 1920, charging that the defendants in Fitchburg on October 7, 1920, did unlawfully expose and keep for sale intoxicating liquors without any authority, license or appointment therefor.

On appeal to the Superior Court, the cases were tried together before *Thayer*, J.  Material evidence is described in the opinion. The labels upon the bottles of Jamaica ginger, referred to in the opinion, were as follows:

" Cont.          2 ozs.
U. S. P.
EXTRACT OF GINGER
J 112
Contains 91% Alcohol

Recommended by us for Relief of Pain in Stomach and Bowels and for Colic and Cramps due to Flatulence. ADULTS DOSE, one half teaspoonful in ½ tumbler of sweetened water — hot water is best.

Repeat every hour or two until relief is obtained.

Children from 6 to 12 yrs., 15 drops; from 2 to 6, 10 drops.

This preparation has been made with non-beverage alcohol & the sale or use thereof for beverage purposes will render the vendor or user liable to severe penalties.

Prepared by

NATIONAL PACKING AND PRESERVING CO."

No contention was made by the defendants that the jury were not warranted in finding that the defendants kept Jamaica ginger with intent to sell the same. The defendants objected to the admission of all evidence offered by the Commonwealth tending to show that Jamaica ginger was intoxicating liquor, except that it. was agreed that an analysis of the liquor in the bottles found in the defendants' possession would show the alcoholic content stated on the labels; and alleged exceptions on the ground that it did not. appear that the defendants sold or kept for sale Jamaica ginger for beverage purposes.

At the close of the evidence the defendants requested the judge to rule as follows:

" 1. Possession by the defendants of the Jamaica ginger with intent to sell does not make them criminally liable for the illegal keeping of intoxicating liquor, even though the jury find it was in fact intoxicating, unless they intended to sell it as an intoxicating beverage.

" 2. If the jury finds the defendants kept the Jamaica ginger with intent to sell it for medicinal purposes and not as a beverage,

they should return a verdict of not guilty, even though they might find it an intoxicating liquor.

" 3. If the jury find from all the evidence that the Jamaica ginger kept by the defendants was in fact intoxicating, but was sold or kept for sale by them for medicinal purposes and not as a beverage, then the jury should return a verdict of not guilty, even though the jury might find that said Jamaica ginger was an intoxicating liquor.

" 4. In order to find the defendants guilty the Commonwealth must satisfy the jury beyond a reasonable doubt that the Jamaica ginger was in fact an intoxicating liquor, and that the defendants knew or ought to have known that it was to be used as a beverage.

" 5. The defendants cannot be found guilty if the Commonwealth has not satisfied the jury beyond a reasonable doubt that the Jamaica ginger was in fact intoxicating liquor and sold or kept for sale for use as an intoxicating beverage.

" 6. A sale of Jamaica ginger, even though the jury find it to be in fact an intoxicating liquor is not, without further evidence of the purpose for which it is or is to be used, sufficient to convict the defendants.

" 7. A sale of Jamaica ginger, even though the jury find it to be in fact an intoxicating liquor is not, without further evidence that the defendants knew or ought to have known the purpose for which it was or was to be used, sufficient to convict the defendants."

The judge refused to rule as requested and charged the jury in substance as follows:

" . . . The Commonwealth must establish beyond a reasonable doubt that the defendants kept for sale liquor, and that such liquor was intoxicating within the meaning of the law. . . . The question involved upon which you must pass judgment is this: Was the Jamaica ginger kept for sale by the defendants an intoxicating liquor within the meaning of the law? It is not a question of the name under which this article was sold. . . . Neither is it a defence, that the defendants did not know that Jamaica ginger was an intoxicating liquor, if it was in fact intoxicating. . . . Neither is it a defence that the defendants did not intend to sell Jamaica ginger as an intoxicating liquor, if it was such in fact. . . . Even if the Jamaica ginger was sold for medicinal purposes, that

would not be a defence, provided the Jamaica ginger was in fact an intoxicating liquor within the meaning of the law. . . . This being so, if then Jamaica ginger, either by itself or diluted with water or other non-alcoholic liquids is drunk in such excessive quantities as a beverage that the Jamaica ginger alone in such mixture causes or produces intoxication or drunkenness, then Jamaica ginger is an intoxicating liquor within the meaning of the law.

"In the first place, it is a matter of common knowledge that it is the alcohol, either distilled or fermented in liquors, that produces intoxication. The Commonwealth produced a chemist, who testified that neither ginger nor any other ingredient in Jamaica ginger would cause intoxication excepting the alcohol, and that none of the other ingredients had any tendency toward counteracting the intoxicating effect of alcohol in said mixture; and that said Jamaica ginger, on account of the large per cent of alcohol in it, when drunk by itself or diluted with water or other non-intoxicating liquids, in excessive quantities, will cause intoxication or drunkenness. If this be true, then Jamaica ginger is an intoxicating liquor. Jamaica ginger may be proven to be intoxicating by those who have drunk it, provided it made them intoxicated.

" It may be established by those who have seen it drunk by others, provided they can say from their own knowledge and observation it made such others intoxicated.

" It might be established by those who can identify Jamaica ginger by its odor, provided the odor came from persons who were drunk at the time the odor was detected.

" Police officers might testify that persons arrested for drunkenness and who were drunk, had emptied or partially emptied Jamaica ginger bottles upon their person."

The defendants excepted to such parts of the charge as were inconsistent with the requests for rulings.

The jury found both defendants guilty; and they alleged exceptions.

The bill of exceptions stated: " The only question intended to be raised by this bill of exceptions is as follows: 'Can the defendants be convicted as a matter of law without proof that they intended to sell Jamaica ginger as an intoxicating beverage or kept it for sale with such intention?' "

*J. H. Walsh, Jr.*, for the defendants.

*E. T. Esty*, District Attorney, for the Commonwealth.

CARROLL, J. These two cases were tried together. The defendants were charged with keeping for sale intoxicating liquors without authority, license or appointment therefor. They owned a store in Fitchburg in which tobacco, cigars, candy and soda were sold. The jury were warranted in finding that on two occasions, on October 3, 1920, the defendant William Lanides, and on one occasion the defendant Charles Lanides, sold Jamaica ginger. Near the sink under the counter over which soda was sold, five bottles containing Jamaica ginger were found. A copy of the label on them is set out above. It was agreed that an analysis of the Jamaica ginger would show the percentage of alcohol appearing on the label. A chemist testified that Jamaica ginger was made from a formula in the United States Pharmacopoeia and contained from eighty-seven to ninety-one per cent alcohol, and because of the large amount of alcohol contained in it, when drunk to excess, by itself or diluted with other liquors, would cause intoxication. Two witnesses testified that they had become intoxicated from drinking Jamaica ginger and had seen others become drunk from drinking it. A police surgeon who had observed the condition of persons intoxicated from the excessive use of Jamaica ginger, testified to the distinctive characteristics, not found in cases of drunkenness caused by drinking other alcoholic liquors; that a two ounce bottle of it contained as much alcohol as a quart of whiskey; and that thirty-five per cent of the cases of drunkenness observed by him during the last eighteen months resulted from drinking Jamaica ginger. There was further evidence that many persons arrested for drunkenness had on their person emptied or partially emptied Jamaica ginger bottles.

All the evidence tending to show that Jamaica ginger was intoxicating liquor, except the agreement to the alcoholic content of the five bottles referred to, was admitted, subject to the defendants' exceptions. They made certain requests for rulings of law which were refused. The bill of exceptions recites that the only question intended to be raised is this: " Can the defendants be convicted as a matter of law without proof that they intended to sell Jamaica ginger as an intoxicating beverage or kept it for sale with such intention? "

By R. L. c. 100, the sale or keeping for sale of spirituous or intoxicating liquors, except as authorized in that chapter is prohibited. By § 2, in addition to ale, porter, strong beer, lager beer, cider, wines and distilled spirits, any beverage containing more than one per cent of alcohol is intoxicating liquor, within the meaning of the statute.

In *Commonwealth* v. *Sookey*, 236 Mass. 448, it was decided that we could not take judicial notice that extract of Jamaica ginger is an intoxicating beverage and generally sold as such. In the course of the opinion it was said at pages 451, 452: " In this jurisdiction, where licenses for the sale of intoxicating liquors have been granted under a local option system and there has been little occasion in many communities to resort to substitutes therefor, it has not become, as yet at least, a matter of common and general knowledge that ordinarily this well known preparation is sold not for medicinal purposes, but as a disguised substitute for liquor." And it cannot now be assumed that as matter of law, Jamaica ginger is commonly used as a liquor for drinking, and therefore is an intoxicating beverage. It is a question of fact whether the preparation is a beverage, and if used extensively for such purposes and is intoxicating, a jury is warranted in finding that it is an intoxicating beverage, although it is called a medicine and is taken by many only for medicinal purposes.

There was abundant evidence that Jamaica ginger was in general use as a beverage and as it contained more than one per cent of alcohol, the jury could find that the defendants kept intoxicating liquors for sale in violation of the statute.

Under R. L. c. 100, if the defendants kept for sale intoxicating beverages or any preparation which, although commonly used as a household remedy, was intoxicating and was used to such an extent for drinking that a jury could say it was a beverage, the defendants' intent in making the sale was entirely immaterial. If they kept it for sale and supposed it was to be used medicinally, this was no defence. A beverage containing more than one per cent of alcohol is intoxicating liquor, just as ale and beer, or brandy and whiskey, or distilled spirits are intoxicating liquor under the statute. Its sale is prohibited and it is no excuse in law that the seller believed it was not a beverage or an intoxicating liquor and did not intend to sell it for any purpose except to be used as a

medicine. *Commonwealth* v. *Nickerson,* 236 Mass. 281. *Commonwealth* v. *Boynton,* 2 Allen, 160. *Commonwealth* v. *Savery,* 145 Mass. 212. *Commonwealth* v. *Mixer,* 207 Mass. 141. *Commonwealth* v. *Sacks,* 214 Mass. 72. " In order to determine whether the statute applies to a sale, the true test is to inquire whether the article sold is in reality an intoxicating liquor. If it is, the sale is illegal, although it is sold to be used as a medicine, or it is attempted to disguise it under the name of a medicine, or it is a mixture of liquor and other ingredients." *Commonwealth* v. *Ramsdell,* 130 Mass. 68, 69.

The defendants rely on St. 1910, c. 172, and contend that under this statute the burden of proof is upon the Commonwealth to show that they intended to sell the Jamaica ginger as an intoxicating beverage. St. 1910, c. 172, provides that §§ 21 to 29 inclusive of R. L. c. 100, relating to licenses of the fourth and sixth classes, for the sale of intoxicating liquors by druggists and apothecaries, and R. L. c. 75, § 26, relating to the adulteration of drugs and their sale, and R. L. c. 213, § 2, relating to the sale of poisons, " shall not apply . . . [so far as material to this case] to the sale in original packages of the following, if put up by registered pharmacists, manufacturers, or wholesale dealers in conformity with the Revised Laws, namely: — flavoring essences or extracts, essence of Jamaica ginger," and other well known household remedies therein mentioned.

In considering this statute, we assume that the words " Jamaica ginger," " extract of ginger," and " essence of Jamaica ginger " are synonymous. St. 1910, c. 172, does not, however, authorize in any way the sale of intoxicating beverages. That is prohibited. R. L. c. 100. If the article sold is in reality ale or whiskey, or an intoxicating liquor under R. L. c. 100, whatever name may be given to it, the prohibition of the statute applies and the sale is illegal. *Commonwealth* v. *Boynton, supra. Commonwealth* v. *Ramsdell, supra. Commonwealth* v. *Savery, supra.* The intention of the dealer may be honest; he may have intended that the preparation is not to be used as a beverage, and he may suppose it was to be used as a household remedy; but this does not excuse him. The offence is not in the intention, but in the act. *Commonwealth* v. *Mixer, supra. Commonwealth* v. *Sacks, supra.* If the defendants sold or kept for sale an article used so extensively for drink-

ing as to become a beverage, and containing more than one per cent of alcohol, the jury were warranted in finding them guilty. When such an article is kept for sale, the question to be decided is, is the substance an intoxicating beverage? If there is any evidence to show its common use as such, then the question is one of fact. A harmless preparation in general use for toilet or household purposes, and sold by merchants, does not become an intoxicating beverage within the meaning of the statute, because it is so used occasionally or in rare instances; but if there is evidence tending to show that the article is an intoxicating beverage, its sale is prohibited.

The Legislature did not intend to stop the sale of articles which are not intoxicating beverages, but it did intend to stop the sale of spirituous and intoxicating liquor, and the fact that the preparation may be used as a medicine is no excuse for its sale, if it is in reality an intoxicating beverage prohibited by law.

The evidence tending to show that the Jamaica ginger was an intoxicating beverage and was commonly used as such was admissible, and there was no error of law in refusing the defendants' requests or in the rulings given by the presiding judge.

*Exceptions overruled.*