COMMONWEALTH *vs.* LEWIS CORBETT.

Suffolk.   April 1, 1940. — September 17, 1940.

Present: FIELD, C.J., DONAHUE, LUMMUS, QUA, & RONAN, JJ.

*Contraceptive.*

No violation of G. L. (Ter. Ed.) c. 272, § 21, was shown by a sale of an
article, capable of use and in some instances used for the prevention of
conception but also capable of use and in some instances used for the
prevention of the transmission of disease, without proof that the sale
in question was made with knowledge that the article was intended
to be used for prevention of conception.   DONAHUE, J., dissenting.

COMPLAINT, received and sworn to in the Municipal
Court of the City of Boston on January 8, 1940.

On appeal to the Superior Court, the defendant was
found guilty by *Williams,* J., who reported the case to this
court.

*S. Silverman,* (*I. Gordon* with him,) for the defendant.

*J. T. Cassidy,* Assistant District Attorney, for the Commonwealth.

LUMMUS, J.   The defendant, a registered pharmacist,
was convicted by a judge of the Superior Court, sitting
without jury, upon a complaint charging that the defendant sold to one Stilphen "certain articles for the prevention
of conception to wit: condoms."   The complaint was
brought under G. L. (Ter. Ed.) c. 272, § 21, which has
remained in substantially the same form since its original
enactment as St. 1879, c. 159, § 1.   By that section, "Whoever sells, lends, gives away, exhibits, or offers to sell, lend
or give away an instrument or other article intended to be
used for self-abuse, or any drug, medicine, instrument or
article whatever for the prevention of conception or for
causing unlawful abortion . . . ," is guilty of felony.   The
judge denied the request of the defendant for a ruling that
upon all the evidence he could not be found guilty, and
reported the case.

The present case requires an interpretation of that section of the statutes. The public policy of the Commonwealth in the creation of crimes is not for this court to determine, but for the Legislature. Our function is merely that of discovering the meaning of the words that the Legislature has used, bearing in mind that under the American system of law a citizen is not to be punished criminally unless his deed falls plainly within the words of the statutory prohibition, construed naturally. His deed is not to be declared a crime upon ambiguous words or by a strained construction. *Coolidge* v. *Choate*, 11 Met. 79, 82. *Commonwealth* v. *Pentz*, 247 Mass. 500. *Libby* v. *New York, New Haven & Hartford Railroad*, 273 Mass. 522, 525–526. *Connally* v. *General Construction Co.* 269 U. S. 385. *United States* v. *Resnick*, 299 U. S. 207. *People* v. *Shakun*, 251 N. Y. 107, 113, 114. *People* v. *Wallace & Co.* 282 N. Y. 417.

It is clear that the public policy of the Commonwealth, as declared by the Legislature, is offended by the sale of articles intended to prevent conception. In *Commonwealth* v. *Gardner*, 300 Mass. 372, this court refused to read into the statutory prohibition in question any exception permitting the prescription in good faith by physicians, in accordance with generally accepted medical practice (see *United States* v. *One Package*, 13 Fed. Sup. 334, 86 Fed. [2d] 737), of contraceptives for use by married women, not pregnant, whose physical condition makes pregnancy and childbirth unusually dangerous to their health and even to their lives. The statutory section in question was held to provide "absolute and unconditional prohibition against the sale, gift, or loan of contraceptive drugs, medicines, or articles for that end." (Pages 375–376.) See also *State* v. *Nelson*, 126 Conn. 412.

But it does not appear to be any part of the public policy of the Commonwealth, as declared by the Legislature, to permit venereal disease to spread unchecked even among those who indulge in illicit sexual intercourse. It is now recognized that venereal disease cannot be confined to the guilty, but may afflict innocent wives or husbands, innocent children in whom it is congenital, and innocent victims

of contact with diseased persons or the germs of disease apart from sexual intercourse. Statutes show that the policy of the Commonwealth is to endeavor to check the spread of venereal disease. G. L. (Ter. Ed.) c. 111, §§ 112, 117–121; c. 112, § 12. St. 1933, c. 44. St. 1935, c. 155. St. 1936, c. 115. St. 1937, c. 391. St. 1938, c. 265, §§ 14–16. St. 1939, c. 407.

The difficulty in the present case results from the fact that the articles sold by the defendant are not exclusively either "for" the prevention of conception or "for" the prevention of disease. The Commonwealth, acting by the district attorney, and the defendant, have agreed as follows: "Condoms are used in some instances for the purpose of preventing the transmission of venereal disease, and in some instances for the purpose of preventing conception. The condom is medically recognized and regarded as a venereal disease prophylactic." The package sold was marked "Sold for prevention of disease." The buyer was a police officer, who bought the articles to hold as evidence, and not to use for any other purpose. The defendant did not know to what use the buyer intended to put them. There was no evidence that the sale was made with a view to use for any unlawful purpose.

The Commonwealth contends that since articles such as were sold are capable of use for an unlawful purpose and in some instances are used for that purpose, the fact that they are equally capable of use and in some instances are used for a lawful purpose should be disregarded, and the sale should be condemned as a sale of articles "for" the prevention of conception.

On the contrary, the defendant contends that the word "for" refers to the intended purpose in the mind of the seller (*Weinstein* v. *United States*, 293 Fed. 388; *Davis* v. *United States*, 62 Fed. [2d] 473, 475), and that the articles themselves, being capable of a lawful use as well as an unlawful one, cannot be declared articles "for" the unlawful use without proof that in the particular instance they were sold with a view to unlawful use (*Graves* v. *Johnson*, 156 Mass. 211; *Youngs Rubber Corp. Inc.* v. *C. I. Lee*

*& Co. Inc.* 45 Fed. [2d] 103, 108), or at least that the seller knew that an unlawful use was intended by the buyer. In the absence of proof that use for an unlawful purpose was intended, the defendant contends that he cannot be convicted, any more than under a statute which might forbid the sale of articles for gaming, or for the taking of human life, the seller of a pack of cards, a rifle, a razor, or a quantity of potassium cyanide could be held guilty as matter of law. The defendant further suggests that if mere capacity to prevent conception, and use in some instances for that purpose, are enough, the sale of many familiar and almost necessary antiseptic, hygienic and sterilizing articles will fall within the prohibition of the law. See *State* v. *Arnold,* 217 Wis. 340, 344, 345–346.

Our task is to discover which of these conflicting constructions conforms to the real meaning of the words used by the Legislature in expressing its intent.

There are indications in the statute of 1879 and its successors that the construction contended for by the defendant is substantially correct. In the first place, no reason appears for requiring that an instrument or other article be shown to have been "intended to be used for self-abuse," and then being satisfied with mere capacity for use and actual use in some instances when dealing with "any drug, medicine, instrument or article" capable of preventing conception or of causing unlawful abortion. The insertion of the words "drug" and "medicine" made necessary some change in grammatical construction, and precluded, after the words "for self-abuse," the simple adding of the words *or for the prevention of conception or for causing unlawful abortion,* and the applying of the phrase "intended to be used" to all three purposes. There is reason for believing, however, that the words "intended to be used" were in effect to be understood before the word "for" in the two instances in which they are omitted in the text. They may have been omitted either because to repeat them would have made the wording cumbrous, or because the word "for" by itself conveys the same idea of intent or purpose.

The original statute (St. 1879, c. 159) in § 1 made it a

crime to sell, etc., any "article whatever for the prevention of conception." In substance that section exists unchanged in the present law. Section 2 provided for search, seizure, forfeiture and destruction, as to "all the articles . . . described in section one." The same "articles" were meant in both sections. When § 2 was incorporated in Pub. Sts. (1882) c. 212, § 2, Fifth, (now G. L. [Ter. Ed.] c. 276, § 1, Ninth), there was no intention to change the law. Resolves, 1880, c. 46. *Wright* v. *Dressel*, 140 Mass. 147, 149. But the words of § 2 were expanded by providing that search warrants might be issued "to search for drugs, medicines, instruments, and other articles intended to be used for self-abuse, or for the prevention of conception, or for causing unlawful abortion . . . ." In reading that sentence it would be unnatural to hang all three dependent phrases on the words "drugs, medicines, instruments, and other articles," thus leaving one of them to begin with the participle "intended" and the other two to begin with the preposition "for." The natural construction would be to let all three dependent phrases hang on the words "intended to be used" and to let each one of the three begin with "for." So construed, the Public Statutes afford a legislative clarification and interpretation of the words of St. 1879, c. 159, following so soon after that statute as to be almost contemporaneous with it, by which it appears that in both sections of the original statute the articles referred to were those intended to be used for the prevention of conception, and not those merely capable of such use and in some instances so used. It would be absurd to attribute to the Legislature an intent to make felonious the sale of an article merely because it is capable of use and in some instances is used for an unlawful purpose, and at the same time to require further proof that it is intended to be so used when nothing more is at stake than the forfeiture of the article.

Furthermore, in G. L. (Ter. Ed.) c. 272, § 21, the prohibition of the sale, etc., of an "instrument or article . . . for the prevention of conception" is followed immediately by the words "or for causing unlawful abortion." Appar-

ently an abortion intentionally caused by a surgeon, because it is necessary to save the life of a woman, is not an unlawful abortion. *Commonwealth* v. *Sholes,* 13 Allen, 554, 558. *Commonwealth* v. *Thompson,* 108 Mass. 461, 463. The use of the words unlawful and unlawfully in the statutes dealing with abortion, so indicates. G. L. (Ter. Ed.) c. 272, §§ 19, 21; c. 276, § 1, Ninth. Since the same instrument or article that would cause a lawful abortion would doubtless cause an unlawful one, if a dealer in surgical instruments should be accused of selling to a surgeon an instrument "for" causing unlawful abortion, an inquiry would necessarily be opened as to the purpose for which the particular instrument was sold and intended to be used. It would be strange to hold that intent and purpose are material in construing the word "for" in the phrase "for causing unlawful abortion," and immaterial in construing the same word in the phrase "for the prevention of conception." This affords another indication that the construction contended for by the defendant is substantially correct. *United States* v. *One Package,* 86 Fed. (2d) 737, 739.[1]

Not only does the legislative construction of the phrase "article . . . for the prevention of conception" favor the contention of the defendant, but so does the judicial construction heretofore put upon the same or similar words. In *United States* v. *One Package,* 86 Fed. (2d) 737, a statute prohibiting the importation of "any article whatever for the prevention of conception" was held not to apply to an article capable of use for that unlawful purpose and also for a lawful purpose, and not shown to be intended for that unlawful purpose. See also *United States* v. *Nicholas,* 97 Fed. (2d) 510, 512; *State* v. *Arnold,* 217 Wis. 340, 347. In *State* v. *Zellmer,* 202 Iowa, 638, a statute made unlawful "the possession of a spear, trap, net, or seine, for fishing." It was held that the defendant could not be convicted unless

---

[1] Here as well as anywhere we may deal with the suggestion that even though the purpose for which the articles are sold is the prevention of disease, an incidental but inevitable result of their use is the prevention of conception. As has been shown, the words of the statute require proof of intended use for an illegal purpose, and are not satisfied by mere incidental result. Besides, the suggested result is not inevitable. The woman may be incapable of pregnancy.

he intended to use the articles for fishing. In *State* v. *Hardin*, 1 Kans. 474, a pack of cards, such as is commonly used for amusement, was held not a "gambling device, adapted, devised and designed for the purpose of playing any game of chance for money or property," unless, as was later pointed out in *State* v. *Stillwell*, 16 Kans. 24, 26, it was intended to be used in gambling. See also *State* v. *Brown*, 118 Kans. 603; *State* v. *Hall*, 228 Mo. 456. In *State* v. *Terry*, 91 N. J. Law, 539, a statute making criminal the keeping of a place "to which persons may resort for gambling" was held to require an intent on the part of the keeper that gambling should take place. It has been held that the question whether a table is a "table for gaming" within the prohibition of a statute, is to be determined by the use to which it is actually appropriated. *Toney* v. *State*, 61 Ala. 1. *Bibb* v. *State*, 84 Ala. 13. See also *Ritte* v. *Commonwealth*, 57 Ky. 35; *People* v. *Jennings*, 257 N. Y. 196.

The Massachusetts cases of *Commonwealth* v. *Sookey*, 236 Mass. 448, *Commonwealth* v. *Lanides*, 239 Mass. 103, and *Commonwealth* v. *Brennan*, 262 Mass. 180, are not in point. In the first case, under a statute forbidding the unauthorized sale of intoxicating liquor, which was defined as including in addition to liquors specifically named "any beverage which contains more than one percent of alcohol," it was held that without proof the court could not hold that extract of Jamaica ginger was "fit for beverage purposes, much less that it was ordinarily so used." A liquid is not a beverage merely because it can be drunk. A beverage is a liquid drunk for pleasure. *Commonwealth* v. *Mandeville*, 142 Mass. 469. But under the then existing law the character of a liquid, containing considerable alcohol, as a "beverage" and therefore as an "intoxicating liquor," was determined by inquiring whether it was actually in use as a beverage, and not by inquiring whether its use as a beverage was intended in the particular case. It could not be intoxicating liquor and nonintoxicating liquor at the same time. The right to sell brandy, for example, as a medicine, was given in Massachusetts by licensing drug-

gists to do so (*Commonwealth* v. *Kimball*, 24 Pick. 366; R. L. [1902] c. 100, § 18), not by interpreting the words "intoxicating liquor," as has been done in some States, to exclude brandy and other spirits sold for medicinal or other nonbeverage purposes. *Nixon* v. *State*, 76 Ind. 524. *State* v. *Larrimore*, 19 Mo. 391. Accordingly, when it was proved in a case subsequent to the *Sookey* case that extract of Jamaica ginger had become commonly used as a beverage, it immediately fell into the class of intoxicating liquor, without proof of its intended use in the particular instance. *Commonwealth* v. *Lanides*, 239 Mass. 103. See also *Commonwealth* v. *Brennan*, 262 Mass. 180. These cases have no bearing upon the construction of the words "article . . . for" a certain purpose, in the statute before us. The decision in *Commonwealth* v. *Gardner*, 300 Mass. 372, has no materiality upon the present question, for in that case the purpose of the defendants to prevent conception was admitted. In *State* v. *Arnold*, 217 Wis. 340, 348, which arose under a statute somewhat like ours, the court conceded that proof of the intent of the seller that the article be used for the prevention of conception was necessary for conviction, though it permitted that intent to be inferred from placing the article on sale in a vending machine located in a public toilet. No such basis for inference appears in the present case. If our analysis of the language of the statute before us shows it to be less stringent than is desired, the remedy must be sought in the Legislature.

> *Judgment reversed.*
> *Judgment for the defendant.*

DONAHUE, J., dissenting. The Legislature, in enacting the statute on which the complaint against the defendant in this case is based, established a public policy with respect to the articles and the acts therein described. Where a public policy is thus established by the Legislature in a criminal statute which is not unconstitutional the Legislature's view as to public policy should be given effect. See *VanDresser* v. *Firlings*, 305 Mass. 51, 53.

The statute here under consideration describes three

kinds of articles which are in nature quite different, as are the effects of their use. These are: articles usable in acts of self abuse, articles usable for the prevention of conception and articles usable in producing an unlawful abortion. As to the first class of articles the statute specifically provides, in order that their sale constitute a crime, that they were "intended to be used for self-abuse." But in the following phrases of the same sentence dealing with the second and third classes of articles the words "intended to be used" or words of similar import do not appear.

It would seem that the manifest difference in the description of the crimes constituted in a single sentence of the statute, may not properly be ignored. The Legislature, in its informed wisdom, may well have thought that articles that could be employed for self abuse were of such a character or the effects of their use such, that as matter of public policy, their sale need not be made a crime unless the seller knew that such articles were "intended to be used" for the stated purpose. The Legislature may also have thought that articles "for the prevention of conception or for causing unlawful abortion" were of such a character, or the effect of their use such, that public policy required that their sale be made a crime regardless of the seller's knowledge or lack of knowledge of their intended use.

The statute would seem adequately to express, in language that is not ambiguous, the purpose of the Legislature to make a seller's knowledge of the buyer's intent to use an instrument unlawfully, an element of the crime of selling articles in the first class, and to have omitted making such knowledge an element of the crimes of selling articles in the second and third classes. "Statutes must be interpreted as enacted. Omissions cannot be supplied by the judicial department of government." *Morse* v. *Boston*, 253 Mass. 247, 252. *Hite* v. *Hite*, 301 Mass. 294, 300.

In the common usage of words, the phrase "any . . . instrument or article whatever for the prevention of conception or for causing unlawful abortion" describes the character of such instruments and articles in terms of their adaptability for the stated uses. The meaning of this

language of the statute would seem to be plain without reading into it words which the Legislature did not see fit to use. Giving to the words of the statute their ordinary meanings, it seems clear that the character of articles in the second and third classes, sold by the defendant, was, and the seller's knowledge that the buyer intended to use them unlawfully, was not, an essential element of these crimes that the statute created.

The opinion speculates as to supposed mechanical difficulties in so drafting the statute that the words "intended to be used" would be more closely connected with the words "prevention of conception" and "unlawful abortion." It suggests that "the words 'intended to be used' were in effect to be understood before the word 'for' in the two instances in which they were omitted in the text." This seems to imply ambiguity in the language of the statute. The language of the statute, "Whoever sells, lends, gives away, exhibits, or offers to sell, lend or give away . . . any drug, medicine, instrument or article whatever for the prevention of conception" (G. L. [Ter. Ed.] c. 272, § 21), was considered by us less than three years ago. We then said that the terms of the statute above quoted "are plain, unequivocal and peremptory. They contain no exceptions. They are sweeping, absolute, and devoid of ambiguity. They are directed with undeviating explicitness against the prevention of conception by any of the means specified. It would be difficult to select appropriate legislative words to express the thought with greater emphasis." *Commonwealth* v. *Gardner*, 300 Mass. 372, 375.

The statute on which the complaint is based consists of a single sentence. The opinion discusses only the language in the first third of the sentence. The intention of the Legislature in enacting a statute should be determined from all its parts. *Williams* v. *Contributory Retirement Appeal Board*, 304 Mass. 601.

The statute read as a whole manifests the broad intent to affix criminality to the various enumerated acts of a person with respect to articles adapted for use for the prevention of conception or for causing unlawful abortion. The

acts, made criminal, range from the act of manufacturing such articles to the act of selling them. This statute does not include as a crime the act of using such articles for the purpose for which they are adapted.

Among other things, the statute provides that one who "exhibits" such an article, although he never makes a sale; that a person who "advertises" it, but never receives a response to his advertisement; that one who gives "notice" in writing or print as to where and how such article may be obtained although nobody acts on such notice; and that one who merely "manufactures" such an article but does no more, commits a criminal offence, as does one who "sells" such an article. The statute makes no distinction between the selling of such an article, and the doing with respect to it of the various other enumerated acts that the statute declares to be crimes. The objective of the statute clearly was to make each of the various stated acts or dealings with such articles a crime without regard to the effects of such act, or to the knowledge, or lack of knowledge, of a defendant, as to the intended use of the article by a person into whose possession it might come. If, as the opinion appears to hold, one who sells such an article cannot be convicted without proof that he knew that an unlawful use was intended by the buyer, it would seem that one charged with doing any of the various other acts described in the one sentence statute, could not be convicted without proof as to his knowledge of an intent of an ultimate buyer or owner to use the article for an unlawful purpose.

Very rarely could proof be obtained that a seller, or a manufacturer, or any of the many other persons described in the statute, had knowledge that a buyer or one otherwise obtaining possession of such an article had in his mind an intent to use it unlawfully. As a practical matter, under the construction of the language of the statute adopted by the opinion, it would be almost impossible ever to obtain a conviction under this statute. The language of the statute is comprehensive and purposeful. Almost any act that a person could possibly do with respect to the articles in question is described and all such acts are made criminal.

"A statute as a whole is to be construed so as to make it an effectual piece of legislation." *Dascalakis* v. *Commonwealth*, 244 Mass. 568, 570. The construction adopted by the opinion leaves the statute as a whole without practical effect.

The prohibition of the statute is absolute and unconditional. If an exception in the case of a sale was intended it could easily have been expressed. The Legislature might well have believed that such an exception "would endanger the effectiveness of the statute" whose terms "are plain, unequivocal and peremptory." The result expressed in the opinion should "be sought from the law making department and not from the judicial department of government." *Commonwealth* v. *Gardner*, 300 Mass. 372, 375–377.