STATE OF NEW JERSEY, PLAINTIFF-RESPONDENT, v.
WILLIAM R. BAIRD, DEFENDANT-APPELLANT.

Argued October 9, 1967—Decided November 20, 1967.

*Robert I. Ansell* for appellant (*Anschelewitz, Barr & Ansell,* attorneys).

*Thomas L. Yaccarino,* Assistant County Prosecutor, for respondent (*Vincent P. Keuper,* County Prosecutor of Monmouth County, attorney).

*Nancy F. Wechsler* of the New York Bar for Planned Parenthood Federation of America, Inc. *amicus curiae*

(*McCarter & English* by *Eugene M. Haring*, attorneys; *Greenbaum, Wolff & Ernst* by *Harriet F. Pilpel* and *Robert K. Ciulla*, all of the New York Bar, of counsel and on the brief).

PER CURIAM: The defendant William R. Baird telephoned the Chief of Police of the Borough of Freehold, told him that he wanted to test the constitutionality of *N. J. S.* 2A:170–76, and that he wanted to be arrrested after he had made his planned demonstration. On September 10, 1966 he arrived in Freehold, parked his van in a parking lot, and when Mrs. Elizabeth Dean asked him for information on birth control, he led her to the van. There he had a display board of contraceptive devices and medicines and he began to explain them and their uses to Mrs. Dean. He was arrested and a complaint was filed against him charging that he had "exposed to the view of others contraceptives used to prevent birth to wit: rubber prophylactics and diaphrams contrary to the provisions of *N. J. S.* 2A:170–76." He was convicted and fined $100 in the magistrate's court and his conviction was sustained in the county court. His appeal to the Appellate Division was certified by us before argument there.

Preliminarily, we wish to voice our distaste for the unseemly procedural course chosen by the defendant Baird. He could easily have brought a proceeding under the Uniform Declaratory Judgments Act (*N. J. S.* 2A:16–50 *et seq.*) under which an appropriate declaration could have been obtained without any criminal action whatever. See *Lucky Calendar Co. v. Cohen*, 19 *N. J.* 399 (1955); *Sanitary Vendors, Inc. v. Byrne*, 40 *N. J.* 157 (1963); cf. *Evers v. Dwyer*, 358 *U. S.* 202, 79 *S. Ct.* 178, 3 *L. Ed. 2d* 222 (1958); Note, *Declaratory Relief in The Criminal Law*, 80 *Harv. L. Rev.* 1490 (1967). In the *Lucky Calendar* case an advertising company sought and obtained a declaration as to the legality of its proposed sales promotional program; in his opinion for the Court, Chief Justice Vanderbilt

stressed the patent advantages of declaratory testing proceedings over proceedings under the criminal law. 19 *N. J.,* at *p.* 409. In the *Sanitary Vendors* case, a company engaged in the automatic vending machine business brought a declaratory judgment proceeding which resulted in a judicial declaration that its proposed mode of selling contraceptives would be unlawful under *N. J. S.* 2A:170–76. See *Annot.* 96 *A. L. R. 2d* 955, 965–967 (1964).

Coming to the merits, we are entirely satisfied that the defendant Baird's conduct was not unlawful and that his conviction must be set aside. There is nothing at all in the statutes of New Jersey which seeks to prohibit the use of contraceptives or seeks flatly to outlaw their display or exposure. *N. J. S.* 2A:170–76 simply provides that their display or exposure shall be unlawful if "without just cause." The statute had its origins in anti-obscenity legislation (40 *N. J.,* at *p.* 160) and in *Sanitary Vendors* it was applied as a regulatory measure so as to strike down the promiscuous and indiscriminate sale of contraceptives through vending machines as patently offensive to the community. See 40 *N. J.,* at *pp.* 165–166. If the defendant Baird had engaged in the promiscuous and indiscriminate display or exposure of contraceptives at a street corner or at a children's playground, his conduct would fairly be deemed to have been without just cause under *N. J. S.* 2A:170–76 as applied in *Sanitary Vendors.* But here there was no conduct suggestive of obscenity (*A Book v. Attorney General,* 383 *U. S.* 413, 418–421, 86 *S. Ct.* 975, 16 *L. Ed. 2d* 1, 5–7 (1966)) or suggestive of obtrusiveness, pandering and the like (*Redrup v. New York,* 386 *U. S.* 767, 87 *S. Ct.* 1414, 18 *L. Ed. 2d* 515, 517 (1967)); the display or exposure was made in inoffensive circumstances and was incidental to the good faith explanation of birth control to a woman who had made specific inquiry on the subject. *Cf. Griswold v. Connecticut,* 381 *U. S.* 479, 85 *S. Ct.* 1678, 14 *L. Ed. 2d* 510 (1965).

In *Griswold* the Supreme Court struck down Connecticut's efforts to convict the Planned Parenthood League and its Medical Director for having distributed certain birth control information. In the course of the Court's opinion, Justice Douglas noted that the State may not, consistently with the spirit of the First Amendment, "contract the spectrum of available knowledge" and that the freedoms of speech and press include not only the right to utter and print, but also the "right to distribute, the right to receive, the right to read". 381 *U. S.,* at *p.* 482, 85 *S. Ct.,* at *p.* 1680, 14 *L. Ed. 2d,* at *p.* 514. While these rights are not so absolute as to preclude restrictions properly aimed at obscenity, obtrusiveness and the like (*Ginzburg v. United States,* 383 *U. S.* 463, 86 *S. Ct.* 942, 16 *L. Ed. 2d* 31 (1966); *Breard v. Alexandria,* 341 *U. S.* 622, 71 *S. Ct.* 920, 95 *L. Ed.* 1233 (1951)), they clearly furnish measures of protection for conduct such as that engaged in here by the defendant Baird. He had the right to disseminate the birth control information and Mrs. Dean had the right of access to it; the display and exposure of the contraceptive devices were part and parcel of the dissemination and merely served to illustrate and clarify the information being properly given and received. Surely, in the light of the important rights thus being exercised, the display and exposure must be taken to have been made with just cause; since this limited determination requires complete reversal of the conviction and dismissal of the proceedings we shall, in line with traditional principles, not pass on any of the other constitutional and legal issues presented in the briefs of the parties and the *amicus curiae.* See *Ahto v. Weaver,* 39 *N. J.* 418, 428 (1963); *State v. Salerno,* 27 *N. J.* 289, 296 (1958); *State v. Fair Lawn Service Center, Inc.,* 20 *N. J.* 468, 470 (1956).

Reversed.

WEINTRAUB, C. J. (concurring in result). I agree the conviction should be reversed but for the reason that the statute is invalid.

The subject is contraception and the statute, *N. J. S. A.* 2A:170–76, reads:

"Any person who, *without just cause*, utters or exposes to the view of another, or possesses with intent to utter or expose to the view of another, or to sell the same, any instrument, medicine or other thing, designed or purporting to be designed for the prevention of conception or the procuring of abortion, or who in any way advertises or aids in advertising the same, or in any manner, whether by recommendation for or against its use or otherwise, gives or causes to be given, or aids in giving any information how or where any such instrument, medicine or other thing may be had, seen, bought or sold, is a disorderly person."

I have emphasized the phrase "without just cause." Without that phrase, the legislative intent would be clear; with it, the legislative purpose is, to me, unknowable. The phrase drains the statute of any discernible legislative decision with respect to contraception.

The history of the statute is of no help. We may start with *L.* 1868, *p.* 1160 and *L.* 1869, *p.* 1115. The 1868 statute dealt with the sale or exposure for sale of obscene publications while the 1869 act dealt with the same subject but also with any "instrument or article of indecent or immoral use, or article or medicine, for the prevention of conception or procuring of abortion" and with any advertisement concerning such things. In 1873, shortly after the adoption by the Congress of the Comstock Act, 17 *Stat.* 598, 18 *U. S. C. A.* §§ 1461, 1462, our Legislature adopted still another statute (*p.* 77) which dealt with the same subject—traffic in obscene publications and articles for use in contraception or in abortion. The 1868 and 1869 statutes contained no exceptions, while our 1873 act provided in section 5 that the act shall not be "so construed as to render it unlawful for a physician * * * to keep on hand and to prescribe any medicine he may judge to be useful and proper."

It was in the revision of 1877 that the phrase "without just cause" first appeared, and then only in section 44

(*p.* 234) which consolidated the 1868 and 1869 statutes. The 1873 statute was reproduced in sections 45–49 of the revision (*pp.* 235–236), and it remained unqualified by "without just cause" or any like phrase. The 1873 statute was dropped in the revision of 1898, while the 1868 and 1869 statutes, as combined in the revision of 1877, were continued in the 1898 revision as section 53 (*L.* 1898, *p.* 808). Section 53 was later divided in the revision of 1937, so much as dealt with obscene publications becoming what is now *N. J. S. A.* 2A:115–2 and the remainder becoming the section involved in the present case.

Thus we know only that for reasons nowhere revealed the Legislature in the revision of 1877 introduced the phrase "without just cause" in the 1868 and 1869 statutes. Needless to say, there is no common law treatment of obscenity or contraception to which the Legislature could have referred. In *Sanitary Vendors, Inc. v. Byrne,* 40 *N. J.* 157, 165 (1963), our Court said that when the Legislature adopted *N. J. S. A.* 2A:170–76, the statute here involved, "it did so with full recognition of the federal decisions" construing the Comstock Act which "took the position that the congressional prohibition was aimed at illegal contraception." The phrase "without just cause" was introduced in 1877, long before such federal interpretations of the Comstock Act, and in fact the phrase was not added by our Legislature to the 1873 statute which, as I have already noted, was adopted in the wake of the Comstock Act. Of course the Legislature in 1877 could not know what the federal courts might say of a federal statute which did not even speak of "just cause." Nor, in my view, can it be said with realism that the later revisions of 1937 and 1952 were intended to give "without just cause" the coloration of intervening interpretations of the federal act.

I stated my difficulty with the statute before us in a separate opinion in *Gleilman v. Cosgrove,* 49 *N. J.* 22, 57 (1967), which involved another statute which, in my view, was equally devoid of legislative decision:

"There are two constitutional facets to legislative vagueness or ambiguity. One concerns the individual, who is entitled by due process to a reasonably explicit warning as to what he may not do. The other concerns the division of responsibility between the legislative and judicial branches of government, for although, I have no doubt, the judiciary inevitably has a creative role in deciding civil controversies, I do not believe it has a like responsibility with respect to criminal liability. As to that subject, it is the Legislature which should decide what conduct shall be punishable, and although the judiciary should labor to find the legislative intent and to sustain it within constitutional bounds, it is something else to permit the Legislature to pass the policy decision to the judiciary. The point would be plain if the statute recited in so many words that the legislators were unable to agree upon what ought to be justification for a consensual abortion, and being thus unable to agree, the policy problem is assigned to the Supreme Court of the State with the hope that a majority of the Court will work it out. A delegation, with such frankness, would, I am sure, be refused by the Court, and yet the issue is the same whenever a court is unable to discover *what the Legislature intended* and must therefore read into the statute what the judge thinks the legislators ought to have agreed upon if they had his wisdom and courage."

As indicated above, *Sanitary Vendors* found meaning in "without just cause" by reference to the cases which said the Comstock Act was aimed at "illegal contraception." We, however, have no statute making contraception illegal, unless the statute now before us is read to say so by implication, and no one wants to go that far. No other statute says a party guilty of illegal intercourse is guilty of a further offense because he or she avoided pregnancy. And if it is suggested the Legislature meant to impede illicit intercourse rather than to illegalize contraception as such, I could not accept that view of the legislative intent. That thesis would assume the Legislature intended pregnancy (and venereal disease as to such contraceptives as also protect against it) to serve either as a restraint upon illicit affairs or as punishment for them. In my view, the social gain from the deterrence achieved is not worth the tragedy of unwanted pregnancy or venereal disease in the cases in which the statute fails in that purpose; and to prescribe such pregnancy or disease as punishment for illicit intercourse would

be a monstrous thing. I cannot attribute that scheme of values to the Legislature.

Being of this view, I could not join in a policy decision that contraceptives should be sold only to married persons or that the drugstore be the exclusive place of sale. On the contrary, wholly apart from the mercenary element involved,[1] contraceptives should be available for purchase at times when they could serve their intended role. Of course public sensibilities should be respected. I would not want contraceptives to be hawked on street corners, but if "without just cause" means whatever cause I think the Legislature should find agreeable, I would have to disagree with the limitations suggested by *Sanitary Vendors*.

I have referred to *Sanitary Vendors* simply to stress the room for disagreement as to the policy issue involved and the total absence of legislative decision with respect to it. In *Sanitary Vendors* the sole constitutional issue was due process in terms of forewarning to one charged with a violation, and of course the declaratory judgment there given served thereafter to satisfy that due-process demand. The litigants did not present in that case the question whether the statute was an incomplete act of legislation whereby the Legislature simply passed to the judiciary a policy problem the Legislature itself should resolve.

The problem here is not merely to dispose of situations the Legislature did not anticipate. That kind of trimming is an inevitable and proper judicial chore. Here "without just cause" emptied the statute of all legislative direction. If the Legislature did not intend to prohibit all sales of contraceptives, and no one wants to say it did, then the

---

[1] I cannot forget what I believed was the situation when I was concerned with this problem as a member of the Bar. I believed then that the opposition to the vending machine sale was stimulated by manufacturers of condoms whose outlet was the drugstore. The condom was always obtainable; the difference was that the drugstore price was 300 percent of the vending machine figure. The dispute was over price and profit.

unanswered questions are perfectly obvious. They do not present "marginal" situations beyond the draftsman's power of anticipation or expression. So, in *Sanitary Vendors* the Court itself had to say whether condoms should be vended by machine or across the counter. Other questions are perfectly apparent. Suppose the druggist knows the purchaser is unmarried, or separated from his spouse, or makes no inquiry at all? (We would be naive to suppose any druggist would inquire, and I would not want him to.) Or suppose the druggist has a display of contraceptives, packaged or unpackaged, or a placard advertising the availability of the product? Suppose the operator of a tavern, or gas station, or candy store, sells contraceptives across the counter, with or without visual display? In the present case the defendant exhibited the articles to a married woman. Suppose she was single. In what places, and to what gatherings could defendant do so? Suppose a father lectures his son upon this subject, and while strongly advocating abstinence, nonetheless urges that if the young man does err, he should guard against disease and pregnancy, and tells him where to obtain the preventive. We can answer these and other questions as they arise, but, I submit, not on the basis of what the Legislature has said but on the basis only of what we think the criminal law should be. The end product would be ours and not the Legislature's.

The Court should not accept the task of supplying content to this statute. I suspect that when this Court completes the process of "interpretation," there will be precious little left of the measure. But meanwhile the citizen will be restrained by a statute so obscure in its penal interdiction that he cannot act without coming first to us to be assured of the safety of his course. The public interest would be better served by insisting upon a definitive legislative judgment. To that end, I would hold the statute invalid.

FRANCIS and GOLDMANN, JJ., join in this concurring opinion and FRANCIS, J., joins also in the majority opinion.

*For reversal* — Chief Justice WEINTRAUB and Justices JACOBS, FRANCIS, PROCTOR, GOLDMANN, SCHETTINO and HANEMAN—7.

*For affirmance*—None.