COMMONWEALTH *vs.* WILLIAM R. BAIRD.

Suffolk.    December 2, 1968. — May 1, 1969.

Present: WILKINS, C.J., SPALDING, WHITTEMORE, CUTTER, KIRK,
SPIEGEL, & REARDON, JJ.

*Contraceptive.    Constitutional Law,* Freedom of speech, Contraceptive,
Separable portions of statute.    *Obscenity.*

A lecture to students in an auditorium of an educational institution,
discussing various contraceptive devices displayed with diagrams on
demonstration boards or contained in a cardboard box and appraising
their respective merits was not obscene in the constitutional sense.
[750]

G. L. c. 272, § 21, as amended through St. 1966, c. 265, § 3, as applied to
convict a layman of unlawfully exhibiting contraceptive devices, was
unconstitutional where the exhibition thereof was incidental to, and
part of, a lecture to students on that subject protected by the freedom
of speech provision of the First Amendment of the Constitution of the
United States.    [752]

G. L. c. 272, § 21, as amended through St. 1966, c. 265, § 3, as applied to
convict a layman of unlawfully giving away a contraceptive substance
at the close of a lecture to students on the subject of contraceptive
devices, was constitutional.    [752–753] WHITTEMORE and CUTTER, JJ.,
dissenting; SPIEGEL, J., dissenting.

Evidence that a layman, at the close of a lecture on the subject of con-
traceptive devices, personally handed to a young lady a contraceptive
substance warranted a finding that he gave it away in violation of
G. L. c. 272, § 21, as amended through St. 1966, c. 265, § 3, even
though no intent was shown on his part or her part that the substance
be used for the prevention of conception.    [753–754]

The prohibition in G. L. c. 272, § 21, as amended through St. 1966, c. 265,
§ 3, against exhibiting contraceptive devices and the prohibition
therein against giving them away and otherwise distributing them are
separable for the purpose of determining their constitutionality [755].
WHITTEMORE and CUTTER, JJ., dissenting; SPIEGEL, J., dissent-
ing.

INDICTMENTS found and returned in the Superior Court
on June 5, 1967.

The cases were heard and reported by *Macaulay*, J.

*Joseph J. Balliro* for the defendant.

*Joseph R. Nolan*, Assistant District Attorney, for the Commonwealth.

*Roger P. Stokey, Henry Herrmann & Robert S. Bowditch, Jr.*, for Planned Parenthood League of Massachusetts, amicus curiae, submitted a brief.

*Robert B. Kent*, for Civil Liberties Union of Massachusetts, amicus curiae, submitted a brief.

*David S. Fitzpatrick & Alexander B. Grannis*, of New York, for The National Emergency Civil Liberties Committee, amicus curiae, submitted a brief.

WILKINS, C.J. These are two indictments charging violations of G. L. c. 272, § 21, one (No. 29,688) for unlawfully giving away a certain medicine and article for the prevention of conception, the other (No. 29,689) for unlawfully exhibiting certain articles for the prevention of conception, both being not in accordance with G. L. c. 272, § 21A. The evidence shows that these acts occurred during, and incidental to, a lecture to students in an auditorium of an educational institution. The case, along with two motions to dismiss based on constitutional grounds, was heard by a judge of the Superior Court sitting without jury.

The defendant, pursuant to invitation, addressed a group of approximately 2,000 students in Hayden Auditorium at Boston University on April 6, 1967. The address was approximately one hour in length and consisted of a discussion of various contraceptive devices displayed with diagrams on two demonstration boards or contained in a cardboard box and with an exposition of their respective merits. During the address he stated that he was violating the statute and invited arrest. At the close the defendant invited the members of the audience to come to the stage and to help themselves to the contraceptive articles. The defendant personally handed to a young lady a package of Emko vaginal foam, an admittedly contraceptive substance. At this point a police officer told the defendant to call his attorney to the stage and to "wind it up." The defendant

was then taken to police headquarters in company with his attorney, who remained with him.

Following arguments, the judge made a finding of guilty, and denied the motions to dismiss. Being of the opinion that the defendant's motions raise questions of law which are both doubtful and important and require decision by the Supreme Judicial Court, he reported the case in accordance with G. L. c. 278, § 30, both parties assenting thereto. The report incorporates by reference the stenographic record and the exhibits, and contains all the material facts necessary for a review of the following question of law: Are the provisions of G. L. c. 272, § 21, constitutional?

The material part of G. L. c. 272, § 21, as amended through St. 1966, c. 265, § 3, is: "Except as provided in section twenty-one A, whoever sells, lends, gives away, exhibits, or offers to sell, lend or give away . . . any drug, medicine, instrument or article whatever for the prevention of conception or for causing unlawful abortion . . . shall be punished by imprisonment in the state prison for not more than five years or in jail or the house of correction for not more than two and one half years or by a fine of not less than one hundred nor more than one thousand dollars."

The exception in § 21 referring to § 21A was inserted by St. 1966, c. 265, § 3. Section 21A was set forth in c. 265, § 1, which reads in part: "A registered physician may administer to or prescribe for any married person drugs or articles intended for the prevention of pregnancy or conception. A registered pharmacist actually engaged in the business of pharmacy may furnish such drugs or articles to any married person presenting a prescription from a registered physician. A public health agency, a registered nurse, or a maternity health clinic operated by or in an accredited hospital may furnish information to any married person as to where professional advice regarding such drugs or articles may be lawfully obtained."

The amendments made by St. 1966, c. 265, were brought about by the decision in *Griswold* v. *Connecticut*, 381 U. S. 479, which held unconstitutional as applied to married per-

sons a statute prohibiting the use of contraceptives and the giving of advice on the subject.

The *Griswold* case and the ensuing statutory amendments swept away the ground of decision in *Commonwealth* v. *Gardner*, 300 Mass. 372 (1938), which upheld convictions of individuals who were charged with selling or giving contraceptives to married women even if "intended to be used for the prevention of conception only upon prescription by a duly qualified physician when necessary for the preservation of life or health according to sound and generally accepted medical practice" (p. 374). They did not, however, repeal the prohibition against laymen furnishing information or providing contraceptives, and they did not enlarge the group who might be so informed or thus provided. Unmarried individuals are still excluded.

There is nothing in § 21 purporting to prohibit giving advice, discussing, or lecturing on the subject of contraceptives. The two indictments, both limited to § 21, understandably do not call into question anything that the defendant said, but charge that he unlawfully gave away "a certain medicine and article," and unlawfully exhibited "certain articles for the prevention of conception." The defendant contends that his acts must be classified as speech, and are within the protection of the First Amendment. *Cox* v. *Louisiana*, 379 U. S. 559, 563. See *Commonwealth* v. *Dubin*, 327 Mass. 681. Compare *United States* v. *O'Brien*, 391 U. S. 367, 376. But merely because his acts are so classified does not assure constitutional protection.

An aspect of speech which does not receive constitutional protection is obscenity. *Roth* v. *United States*, 354 U. S. 476, 484–485. In some earlier decisions in this Commonwealth dealing with contraception it can be inferred that obscenity was a basis. See, for example, *Commonwealth* v. *Allison*, 227 Mass. 57 (1917), a prosecution under a predecessor statute of G. L. c. 272, § 21, for the advertising, publication, and distribution of birth control pamphlets, which were described (p. 60) as "too indecent to be spread upon the records." In that case it was stated (p. 62), "The dis-

tribution of obscene printing was indictable at common law"; and (pp. 61–62): "One test of obscenity has been said to be whether its tendency is 'to deprave and corrupt those whose minds are open to such immoral influences.' *The Queen* v. *Hicklin,* L. R. 3 Q. B. 360, 371."

In *Roth* v. *United States,* 354 U. S. 476, 489, the opinion of the court stated, "The *Hicklin* test, judging obscenity by the effect of isolated passages upon the most susceptible persons, might well encompass material legitimately treating with sex, and so it must be rejected as unconstitutionally restrictive of the freedoms of speech and press." The *Roth* test was accepted as binding by this court. See *Commonwealth* v. *Moniz,* 338 Mass. 442, 443; *Attorney Gen.* v. *"Tropic of Cancer,"* 345 Mass. 11, 13–20; *Attorney Gen.* v. *"John Cleland's Memoirs of a Woman of Pleasure,"* 349 Mass. 69, 70–72, revd. sub nom. *"John Cleland's Memoirs of a Woman of Pleasure"* v. *Attorney Gen. of Mass.* 383 U. S. 413.

In *"John Cleland's Memoirs of a Woman of Pleasure"* v. *Attorney Gen. of Mass.* 383 U. S. 413, 418, the majority opinion contained the following: "We defined obscenity in *Roth* in the following terms: '[W]hether to the average person, applying contemporary community standards, the dominant theme of the material taken as a whole appeals to prurient interest.' 354 U. S., at 489. Under this definition, as elaborated in subsequent cases, three elements must coalesce: it must be established that (a) the dominant theme of the material taken as a whole appeals to a prurient interest in sex; (b) the material is patently offensive because it affronts contemporary community standards relating to the description or representation of sexual matters; and (c) the material is utterly without redeeming social value." The *Memoirs* case was treated as controlling in *Attorney Gen.* v. *"Naked Lunch,"* 351 Mass. 298, 299.

Tested by these standards, it cannot rightly be contended that the defendant's address was obscene in the constitutional sense. As was said in the *Roth* case, 354 U. S. at 484, "All ideas having even the slightest redeeming social impor-

tance — unorthodox ideas, controversial ideas, even ideas hateful to the prevailing climate of opinion — have the full protection of the guaranties, unless excludable because they encroach upon the limited area of more important interests." See *Commonwealth* v. *Moniz, supra,* 446; *Attorney Gen.* v. *"Tropic of Cancer, supra,* 14".

There is another type of speech which does not have constitutional protection because it may "encroach upon the limited area of more important interests." This might apply if it is deemed "to create a clear and present danger" of substantive evil, to quote from Mr. Justice Holmes in *Schenck* v. *United States,* 249 U. S. 47, 52, or where "there . . . [is] reasonable ground to . . . [believe] that serious evil will result," to use the language of Mr. Justice Brandeis in his concurring opinion in *Whitney* v. *California,* 274 U. S. 357, 376. This is a subject fraught with difficulty for a State court, as the Justices have indicated in the past. See *Opinion of the Justices,* 349 Mass. 786, 791–793.

But where recent pronouncements of the Supreme Court of the United States seem to declare that the legislation may constitute an unwarranted interference with freedom of speech, it becomes our duty to ascertain, and apply, the meaning of those cases by which we are bound. This is the course we have endeavored to follow in the past. See *Commonwealth* v. *Pascone,* 308 Mass. 591, 594; *Commonwealth* v. *Gilfedder,* 321 Mass. 335, 339, 342; *Commonwealth* v. *Dubin,* 327 Mass. 681, 682–683.

In the *Griswold* case, 381 U. S. 479, the court's opinion stated (p. 482): ". . . [T]he State may not, consistently with the spirit of the First Amendment, contract the spectrum of available knowledge. The right of freedom of speech and press includes not only the right to utter or print, but the right to distribute, the right to receive, the right to read . . . and freedom of inquiry, freedom of thought, and freedom to teach . . . ." The reference to freedom of speech in the *Griswold* case was a basis of the decision of the Supreme Court of New Jersey in *State* v. *Baird,* 50 N. J. 376, 380, which reversed the conviction of

the one who is the defendant in the case at bar. He was there charged with having "exposed to the view of others contraceptives used to prevent birth." This had occurred in a van on a parking lot. The court noted that the New Jersey statute merely forbade display or exposure if "without just cause," and said that there was no conduct suggestive of obscenity or of obtrusiveness, pandering and the like; and that "the display or exposure was made in inoffensive circumstances and was incidental to the good faith explanation of birth control to a woman who had made specific inquiry on the subject" (p. 379). The court also emphasized that the enumeration of rights quoted from the *Griswold* case furnished protection for the defendant's conduct; saying (p. 380), "the display and exposure of the contraceptive devices were part and parcel of the dissemination and merely served to illustrate and clarify the information being properly given and received."

As has been noted, the defendant was not indicted for anything he said. We have to consider whether the exhibition of contraceptive devices, for which he was indicted, was incidental to, and part of, the lecture, and thereby within the protection of the First Amendment. The display of those articles was essential to a graphic representation of his subject.

We are of opinion that delivery of the lecture was an exercise of a right of free speech which has First Amendment protection. To the extent that § 21 prohibits exhibiting, it is unconstitutional as applied to the defendant in this case.

The indictment which charges giving away an article "for the prevention of conception" stands on a different footing.[1] There do not appear to be decisions binding upon us which show that the charge would be held to be constitutionally

---

[1] In *Griswold* v. *Connecticut*, 381 U. S. 479, see dissenting opinion of Stewart, J. at p. 529, fn. 3: "If all the appellants had done was to advise people that they thought the use of contraceptives was desirable, or even to counsel their use, the appellants would, of course, have a substantial First Amendment claim. But their activities went far beyond mere advocacy. They prescribed specific contraceptive devices and furnished patients with the prescribed contraceptive materials."

invalid. Since St. 1879, c. 159, § 1, the public policy of this Commonwealth, as legislatively declared, has included a prohibition against distribution of articles for the prevention of conception. Not until the recent amendment by St. 1966, c. 265, § 3, was any exception made in favor of doctors and others who by training or occupation might be deemed to have acquired a special qualification as distributors. The Commonwealth has a legitimate interest in preventing the distribution of articles designed to prevent conception which may have undesirable, if not dangerous, physical consequences. In these circumstances, absent any definite intimation, we shall not guess as to the probable attitude of the Supreme Court of the United States.

Therefore, we do not declare that a statute preventing distribution by indiscriminate persons is beyond legislative power. Unlike the legislation in *Coffee-Rich, Inc.* v. *Commissioner of Pub. Health,* 348 Mass. 414, 424–426, the prohibition in § 21, as applied to the defendant in this case, is directly related to a legitimate legislative purpose. The legitimacy of the purpose depends upon a distinction as to the distributor and not as to the marital status of the recipient.

The bestowal of this item upon an individual in the audience added nothing to the understanding of the lecture, and was not an exercise of a right guaranteed under the First Amendment. We do not accept the argument advanced in a brief of an amicus curiae that the gift of the foam was one of the "appropriate types of action" embraced within the guaranty of freedom of speech as stated in *Brown* v. *Louisiana,* 383 U. S. 131, 142. See *United States* v. *O'Brien,* 391 U. S. 367, 376. If, as there also contended, it is "implementing conduct . . . in the nature of advocacy," a phrase quoted to us from *National Labor Relations Bd.* v. *International Longshoremen's Assn.* 332 F. 2d 992, 999 (4th Cir.), we shall leave such declaration to be made elsewhere.

Even accepting the statute as constitutional in prohibiting distribution, there still must be considered whether there has been a violation in this respect. It is argued that the

act of giving away the device should have been, but was not, accompanied by an intention that the article be used for the prevention of conception. See *Commonwealth* v. *Corbett,* 307 Mass. 7 (1940), which construed G. L. c. 272, § 21, and states (12n.), "As has been shown, the words of the statute require proof of intended use for an illegal purpose, and are not satisfied by mere incidental result." The contention is developed that on the evidence the distributor's intent could have been any of a variety of reasons, including inviting arrest in order to test the validity of the statute. But the judge made no findings on this point, and we are not able to do so. There is also nothing to show that unlawful use was intended by the recipient. See the *Corbett* case, *supra,* 10.

In the case last cited, the article, according to the opinion of the majority, had ambiguous purposes. Had it been advertised as for the prevention of conception, the defendant could have been convicted. *Commonwealth* v. *Goldberg,* 316 Mass. 563. In the case at bar, the foam, as found by the judge, was admittedly a contraceptive, and the plea in behalf of contraceptives presented in the defendant's address has an effect analogous to the advertising in the *Goldberg* case. There was enough to warrant a finding of guilty on the indictment for giving away.

The defendant also invokes the Eighth Amendment arguing that the imposition of the maximum permitted penalty of five years for a violation of § 21 would be cruel and unusual punishment. He stresses that the penalty prescribed is as severe, or more so, as any to be found in statutes creating other offences which are serious crimes. We quote examples which carry a sentence of five years: Misprision of treason. G. L. c. 264, § 3. Indecent assault and battery on child under fourteen. G. L. c. 265, § 13B. Burning of insured property with intent to defraud. G. L. c. 266, § 10. Unnatural and lascivious acts with child under sixteen. G. L. c. 272, § 35A. The maximum sentence for adultery is three years and that for fornication is three months.

The maximum sentence is extremely severe, particularly when compared with the sentences provided in birth control

legislation of twenty-three States cited in the defendant's brief, and with sentences for other crimes in this Commonwealth.

Since the defendant has not been sentenced, we decline further to discuss this question at this time. See *Commonwealth* v. *Leis, ante,* 189, 198–199.

The defendant contends that the prohibition against giving away is not separable from the other provisions of § 21 relating to violations of the First Amendment. The only word which is affected by this opinion is "exhibits" as it applies to the defendant in giving the lecture. It may be constitutional in its application to others. This does not render it doubtful whether the Legislature would enact the balance of the statute, as in *Pedlosky* v. *Massachusetts Inst. of Technology,* 352 Mass. 127. In contemplation of the history of the statute, both remote and recent, we do not believe that the Legislature would prefer to have the entire statute fall if under the First Amendment the word "exhibits" cannot stand, nor do we believe that in that circumstance they would prefer to treat as innocuous the other acts set forth in § 21:— selling or lending or giving away or offering to sell, lend or give away any of the prohibited articles.

The current dispute could have been more appropriately considered under proceedings for a declaratory decree. G. L. c. 231A. See *Mansfield Beauty Academy, Inc.* v. *Board of Registration of Hairdressers,* 326 Mass. 624. The choice of openly challenging the criminal law was unnecessary if the purpose was merely to test the statute and not for some other purpose, such as compelling public attention. See *State* v. *Baird,* 50 N. J. 376, 378–379.

From the fact that we rest this decision wholly upon the Federal Constitution and largely upon its construction by the Supreme Court of the United States, no inference should be drawn that the Declaration of Rights of the Constitution of the Commonwealth is less capable of protecting the essentials of freedom of speech, of the press, and of assembly than is the Federal Constitution. *Commonwealth* v. *Gilfedder,* 321 Mass. 335, 343.

In answer to the question we state: G. L. c. 272, § 21, is unconstitutional as applied to the defendant in case No. 29,689, for unlawfully exhibiting certain articles for the prevention of conception, but § 21 is constitutional as applied to the defendant in case No. 29,688, for unlawfully giving away a certain medicine and article for the prevention of conception.

*So ordered.*

WHITTEMORE and CUTTER, JJ. (dissenting in part) 1. We concur in the first part of the majority opinion, viz. that Baird cannot be convicted constitutionally under § 21 for unlawfully exhibiting contraceptive articles. We also agree that raising these issues of constitutionality by declaratory proceedings would have been more appropriate than the course pursued by Baird.

2. We concur with what Mr. Justice Spiegel says in point First (set out in the fourth paragraph) of his dissenting opinion concerning the propriety of treating Baird's distribution of articles as constitutionally protected protest and speech.

3. We dissent from so much of the majority opinion as holds that Baird may be convicted under § 21 of distributing contraceptive articles, because we think (a) that § 21, read with § 21A, has been so much eroded in the last half century as to be now unconstitutionally vague, and (b) that the prohibition of distributing found in § 21 is not severable from invalid portions of the section.

*First* — Section 21 was designed (see *Commonwealth* v. *Allison*, 227 Mass. 57, 62, concerning a predecessor statute) to prohibit essentially all assistance of birth control. The section was described in *Commonwealth* v. *Gardner*, 300 Mass. 372, 374–375, as "plain, unequivocal and peremptory" and as containing "no exceptions." Its scope, however, has been cut down greatly since the *Allison* decision in 1917 in the following ways.

(1) In *Commonwealth* v. *Corbett*, 307 Mass. 7, 12, it was held that there could not be a conviction under § 21 for the

sale of an article, susceptible of use to prevent disease as well as for contraception, without proof that, in a particular case, the latter use was intended.

(2) Any use of the statute to prohibit serious discussion and assistance of birth control by speech, on the ground that it is inherently obscene, has become constitutionally impossible because of decisions of the Supreme Court of the United States referred to in the first part of the majority opinion.

(3) *Griswold* v. *Connecticut,* 381 U. S. 479, has greatly limited the possible application of § 21.

(4) The enactment of § 21A has permitted, subject to some limitations, the furnishing (by specified persons) of contraceptive articles and information to married persons.

(5) It remains uncertain to what extent § 21 may be constitutionally applied to prohibit advertising and manufacturing of contraceptives.

(6) The opinion in the present case concerning the invalidity of the prohibition of exhibiting contraceptives makes unenforceable a major provision of § 21.  We think that the statutory prohibition of exhibiting necessarily applies to so many persons and so invades their freedom of speech as to make this prohibition unconstitutional on its face.

The consequence of these inroads or possible inroads on § 21 leaves it, when read with § 21A, of highly uncertain content and scope.  We regard what remains of § 21 as comparable to the statutes held void for vagueness in *Alegata* v. *Commonwealth,* 353 Mass. 287, 293, 297–298, 300–301.  See *Hall-Omar Baking Co.* v. *Commissioner of Labor & Indus.* 344 Mass. 695, 708.

*Second* — It is also uncertain what legislative purpose now supports § 21, read with § 21A.

(1) Any valid purpose to suppress obscenity is gone, as the majority opinion shows.

(2) Any general purpose to prevent birth control no longer exists as a result of § 21A.

(3) To say that the legislative purpose is to restrain non-marital intercourse would attribute to the Legislature an

intention to use the risk of pregnancy as a deterrent to, or punishment of, such intercourse. To do so would be contrary to the result and reasoning in *Commonwealth* v. *Corbett*, 307 Mass. 7, 8–12. See *State* v. *Baird*, 50 N. J. 376, 383. For reasons pointed out by Mr. Justice Spiegel in his dissent, with which we agree in large measure, the damage caused by an undesired pregnancy to the unmarried parents, to the unwanted child, and to society as a whole, is so disproportionate to any possible benefit as to raise grave constitutional doubts about the validity of such a deterrent if intended.

(4) We see in § 21 and § 21A, read together, no public health purpose. If there is need to have a physician prescribe (and a pharmacist dispense) contraceptives, that need is as great for unmarried persons as for married persons. This circumstance suggests that the only purpose of § 21A was to meet what were believed to be the minimal requirements of the *Griswold* case, 381 U. S. 479.

All these considerations lead us to the conclusion that the crimes originally defined in § 21, and the legislative purposes originally there reflected, are largely gone. There seems to us to be no rational basis for using what little is left of a statute designed to prevent all assistance of all birth control merely to deter nonmarital intercourse. We also see no such basis for severing and separately applying the prohibition of distributing contraceptives, when what remains of the statute of which this prohibition forms a part has become so uncertain. See *Pedlosky* v. *Massachusetts Inst. of Technology*, 352 Mass. 127.

SPIEGEL, J. (dissenting in part) I agree with the opinion with respect to the indictment charging the defendant with unlawfully exhibiting "certain articles for the prevention of conception."

I agree also that proceedings for declaratory relief would have been far preferable to this needless public demonstration. Such proceedings would have been an orderly method of raising the substantial constitutional issues and could have been so framed in behalf of persons having unquestioned standing as to present adequate facts for adjudication.

I do not concur with the majority's views on the indictment for "unlawfully . . . [giving] away a certain medicine and article for the prevention of conception."

First, I am unable to discern the distinction the majority draw between the defendant's *exhibiting* and the defendant's *distributing*. As the opinion points out "these acts occurred during, and incidental to, a lecture to students." Each of these acts was "implementing conduct . . . in the nature of advocacy." *National Labor Relations Bd.* v. *International Longshoremen's Assn.* 332 F. 2d 992, 999 (4th Cir.). Basically the distribution should be considered part of constitutionally free speech and protest. See *Cox* v. *Louisiana*, 379 U. S. 536.

Second, I do not believe that §§ 21 and 21A reveal the "legitimate legislative purpose" claimed by the majority. The Legislature undoubtedly has the right to protect the health and safety of the public. However, I cannot infer or determine such an intent from a statute which limits the procurement of contraceptive devices to married persons. The adoption of § 21A permitting married persons to receive birth control devices with a prescription can only be interpreted as an attempt to save §§ 20 and 21 from the edict of the Supreme Court of the United States in the case of *Griswold* v. *Connecticut*, 381 U. S. 479. It is at best a strained conception to say that the Legislature intended to prevent the distribution of articles "which may have undesirable, if not dangerous, physical consequences." If that was the Legislature's goal, § 21 is not required. See G. L. c. 94, § 187A; Federal Food, Drug & Cosmetic Act, 21 U. S. C. § 353 (1964).

Nor do I believe that the purposes set forth by this court over fifty years ago in the case of *Commonwealth* v. *Allison*, 227 Mass. 57, 62, are valid today.[1] Even if we disregard

---

[1] "Manifestly . . . [the statutes] are designed to promote the public morals and in a broad sense the public health and safety. Their plain purpose is to protect purity, to preserve chastity, to encourage continence and self restraint, to defend the sanctity of the home, and thus to engender in the State and nation a virile and virtuous race of men and women." *Commonwealth* v. *Allison, supra,* at 62.

the mores of the era in which we live, intervening Federal decisions have overridden any intended desire to control contraceptive information as obscenity.   The recent exception for married persons eliminates the propagation of a "virile and virtuous race" as a likely legislative purpose. In the case of *Commonwealth* v. *Corbett*, 307 Mass. 7, 8–9, this court rejected as a legislative purpose of § 21 the punishment of illicit sexual intercourse.   Although in that case reference was made to the "spread[ing] unchecked" of venereal disease, we should also reject the thesis that "the Legislature intended pregnancy . . . to serve either as a restraint upon illicit affairs or as punishment for them." *State* v. *Baird*, 50 N. J. 376, 383.   I am not convinced that the Legislature intended to risk the undesirable effects of an unwanted pregnancy.  See U. Anderson and others, The Medical, Social, and Educational Implications of the Increase of Out-of-Wedlock Births, 56 Am. J. Pub. Health, p. 1866 (1966); U. S. Bureau of Public Assistance, Illegitimacy and Its Impact on the Aid to Dependent Children Program (1960); Fox, Abortion Deaths in California, 98 Am. J. Obstet. & Gync. p. 645 (1967).   The serious risk of an undesired pregnancy and the unwanted child, disastrous alike to the married as to the unmarried parents and to society as a whole, is utterly disproportionate in harm to any slight public benefit to be gained from a probably ineffective attempt to discourage fornication.   It seems to me that § 21 arbitrarily and capriciously affects individual liberties and freedom of behavior and bears no "reasonable relation to some purpose within the competency of the State."  See *Sperry & Hutchinson Co.* v. *Director of the Div. on the Necessaries of Life*, 307 Mass. 408, 418; *Mansfield Beauty Academy, Inc.* v. *Board of Registration of Hairdressers*, 326 Mass. 624, 627; *Coffee-Rich, Inc.* v. *Commissioner of Pub. Health*, 348 Mass. 414, 422–425; *Meyer* v. *Nebraska*, 262 U. S. 390, 399–400; *Griswold* v. *Connecticut*, 381 U. S. 479, 485.

Third, even if I were not concerned with the two previous points discussed, I am convinced that the question of dis-

tribution cannot be severed from the other provision of § 21 which the majority agree is unconstitutional. See *Pedlosky* v. *Massachusetts Inst. of Technology*, 352 Mass. 127. I am not satisfied that the "only word which is affected by . . . [the majority] opinion is 'exhibits' as it applies to the defendant in giving the lecture." As used in the section, the word is "vague and uncertain" (see *Herndon* v. *Lowry*, 301 U. S. 242, 259) and has a "chilling effect upon the exercise of First Amendment rights." See *Dombrowski* v. *Pfister*, 380 U. S. 479, 487, 490–492. In addition, I think that the opinion casts grave doubts on the constitutionality of the portions of § 21 which prohibit advertising and printing, to say nothing of its effect on § 20 as it relates to contraceptive devices. Furthermore, the distinction drawn by the Legislature between married and unmarried persons is of questionable validity. Such a distinction cannot be read out of the statute. Cf. *Commonwealth* v. *Gardner*, 300 Mass. 372, 377. Even without the distinction the original purposes of § 21 can no longer be carried out by the section as amended by the Legislature and interpreted by this court. Its scope of application is indefinite and vague (see *Alegata* v. *Commonwealth*, 353 Mass. 287) and is a "hodgepodge" of uncertainties. See *Hall-Omar Baking Co.* v. *Commissioner of Labor & Indus.* 344 Mass. 695.

I am impelled to conclude that § 21 is incapable of being cut into segments which would be constitutionally valid without, in effect, performing judicial surgery.