William R. BAIRD, Petitioner,

v.

Thomas S. EISENSTADT, as he is Sheriff of Suffolk County, Massachusetts, Respondent.

Misc. Civ. No. 70–16.

United States District Court,
D. Massachusetts.

March 20, 1970.

Joseph J. Balliro, Boston, Mass., for petitioner.

Robert H. Quinn, Atty. Gen., Lawrence P. Cohen, Asst. Atty. Gen., Boston, Mass., for respondent.

## OPINION

JULIAN, District Judge.

William R. Baird, who is presently in the custody of the respondent serving a three-month sentence imposed by the Massachusetts courts, filed this petition for a writ of habeas corpus pursuant to 28 U.S.C. § 2241 claiming that he is in custody in violation of the Constitution of the United States.

The facts are briefly these: The petitioner, pursuant to invitation, addressed a group of approximately 2,000 students in Hayden Auditorium at Boston University on April 6, 1967. The address was approximately one hour in length and consisted of a discussion of various contraceptive devices, displayed with diagrams on two demonstration boards or contained in a cardboard box, and an exposition of their respective merits. During the address he stated that he was violating the statute and invited arrest. At the close the petitioner invited the members of the audience to come to the stage and to help themselves to the contraceptive articles. The petitioner personally handed to a young lady a package of Emko vaginal foam, an admittedly contraceptive substance. The petitioner was thereupon arrested by a police officer and taken to police headquarters.

Petitioner was prosecuted and convicted in the Massachusetts Superior Court on two indictments charging violations of Mass.G.L. c. 272, § 21, one for unlawfully exhibiting certain articles for the prevention of conception, the other for unlawfully giving away an article for the prevention of conception. On appeal the Supreme Judicial Court reversed the conviction for exhibiting the articles,[1] but affirmed the conviction for giving away the article.[2] Petitioner was thereupon sentenced to imprisonment for the term of three months. On January 12, 1970, the Supreme Court of the United States denied certiorari. Baird v. Massachusetts, 396 U.S. 1029, 90 S.Ct. 580, 24 L.Ed.2d 524.

The material part of Mass.G.L. c. 272, § 21, as amended through St.1966, c. 265, § 3, is:

"Except as provided in section twenty-one A, whoever sells, lends, gives away, exhibits, or offers to sell, lend or give away * * * any drug, medicine, instrument or article whatever for the prevention of conception or for causing unlawful abortion * * * shall be punished by imprisonment in the state prison for not more than five years or in jail or the house of correction for not more than two and one half years or by a fine of not less than one hundred nor more than one thousand dollars."

The exception in § 21 referring to § 21A was inserted by St.1966, c. 265, § 3.[3] Section 21A was set forth in c. 265, § 1, which reads in relevant part:

"A registered physician may administer to or prescribe for any married person drugs or articles intended for the prevention of pregnancy or conception. A registered pharmacist actually engaged in the business of pharmacy may furnish such drugs or articles to any married person presenting a prescription from a registered physician. A public health agency, a registered nurse, or a maternity health clinic operated by or in an accredited hospital may furnish information to any married person as to where professional advice regarding such drugs or articles may be lawfully obtained."

The Supreme Judicial Court considered the effect of Griswold v. Connecticut, 1965, 381 U.S. 479, 85 S.Ct. 1678, 14 L.Ed.2d 510, and of St.1966, c. 265, upon § 21 and concluded that "[t]he *Griswold* case and the ensuing statutory amendments swept away the ground of decision in Commonwealth v. Gardner, 300 Mass. 372, 15 N.E.2d 222 (1938), which upheld convictions of individuals who were charged with selling or giving contraceptives to married women even if 'intended to be used for the prevention of conception only upon prescription by a duly qualified physician when necessary for the preservation of life or health according to sound and generally accepted medical practice' (p. 374, 15 N. E.2d p. 223). They did not, however, repeal the prohibition against laymen furnishing information or providing contraceptives, and they did not enlarge the group who might be so informed or thus provided. Unmarried individuals are still excluded. There is nothing in § 21 purporting to prohibit giving advice, discussing, or lecturing on the subject of contraceptives." This construction by the highest Court of Massachusetts is binding upon this Court, so that factually petitioner's conduct is clearly proscribed by statute. No showing was made either in the State courts or be-

1. The Court found the display of the articles "essential to a graphic representation of his subject." It thereupon held that: "delivery of the lecture was an exercise of a right of free speech which has First Amendment protection. To the extent that § 21 prohibits exhibiting, it is unconstitutional as applied to the defendant in this case."

Commonwealth v. Baird, 247 N.E.2d 574, 578 (May 1, 1969).

2. 247 N.E.2d 574.

3. Chapter 265 of St.1966 is entitled "An Act authorizing registered physicians or pharmacists to furnish drugs or articles for the prevention of pregnancy or conception."

fore this Court that petitioner has ever been a physician or pharmacist or was otherwise professionally qualified to prescribe or dispense contraceptives.

To support his position, petitioner presents several constitutional arguments: that the statute lacks a legitimate legislative purpose; that it infringes his right of free speech; that it is unconstitutionally vague; that it is not severable; and that it violates a right of privacy.

■ Considering his arguments *seriatim*, the first question is whether there is a legitimate legislative purpose justifying the statute. On this issue the Supreme Judicial Court stated:

"Since St.1879, c. 159, § 1, the public policy of this Commonwealth, as legislatively declared, has included a prohibition against distribution of articles for the prevention of conception. Not until the recent amendment by St.1966, c. 265, § 3, was any exception made in favor of doctors and others who by training or occupation might be deemed to have acquired a special qualification as distributors. The Commonwealth has a legitimate interest in preventing the distribution of articles designed to prevent conception which may have undesirable, if not dangerous, physical consequences.
* * *

"Therefore, we do not declare that a statute preventing distribution by indiscriminate persons is beyond legislative power. Unlike the legislation in Coffee-Rich, Inc. v. Commissioner of Pub. Health, 348 Mass. 414, 424–426, 204 N.E.2d 281, the prohibition in § 21, as applied to the defendant [petitioner] in this case, is directly related to a legitimate legislative purpose. The legitimacy of the purpose depends upon a distinction as to the distributor and not as to the marital status of the recipient."

247 N.E.2d at 578. This Court accepts as valid and binding the construction placed upon § 21 by the State court.

■ Had § 21A authorized registered physicians to administer or prescribe contraceptives for unmarried as well as for married persons, the legal position of the petitioner would not have been in any way altered. Not being a physician he would still have been prohibited by § 21 from "giving away" the contraceptive.

■ A legislature has the constitutional power to limit the practice of medicine to qualified physicians. The statutes under attack deal with the distribution of contraceptive drugs and devices. It is a matter of common knowledge that contraceptive substances may have harmful effects on the health of those who use them and for that reason are still the subject of extensive medical research.[4] The statutes in question have a clear relationship to the legislative purpose of safeguarding the health of members of the community by placing the distribution of such substances exclusively in the hands of registered physicians and pharmacists. The statutes therefore can reasonably be regarded as furthering an important and substantial governmental interest.

■ Petitioner claims that the "giving away" of the contraceptive was constitutionally protected protest and speech. This Court, however, adopts the view taken by the Supreme Judicial Court that the bestowal of the contraceptive upon the young woman in the audience "added nothing to the understanding of the lecture, and was not an exercise of a right guaranteed under the First Amendment." This conclusion is in accord with recent pronouncements made by the Supreme Court of the United States in this area of constitutional law. Thus, in Cox v. Louisiana, 1965,

4. In his Memorandum in support of the issuance of the writ the petitioner claims that the contraceptive substance he delivered to the young woman was "a safe and medically approved article." No such finding was made by the State courts; there is no basis in the record for such a finding by this Court.

379 U.S. 536, 555, 85 S.Ct. 453, 464, 13 L.Ed.2d 471, the Court stated:

"We emphatically reject the notion urged by appellant that the First and Fourteenth Amendments afford the same kind of freedom to those who would communicate ideas by conduct such as patrolling, marching, and picketing on streets and highways, as these amendments afford to those who communicate ideas by pure speech. * * * We reaffirm the statement of the Court in Giboney v. Empire Storage & Ice Co., *supra*, 336 U.S. [490] at 502, 69 S.Ct. at 691, [93 L. Ed. 834], that 'it has never been deemed an abridgment of freedom of speech or press to make a course of conduct illegal merely because the conduct was in part initiated, evidenced, or carried out by means of language, either spoken, written, or printed.'"

And again in United States v. O'Brien, 1968, 391 U.S. 367, 376–377, 88 S.Ct. 1673, 1678, 20 L.Ed.2d 672:

"O'Brien first argues that the 1965 Amendment is unconstitutional as applied to him because his act of burning his registration certificate was protected 'symbolic speech' within the First Amendment. His argument is that the freedom of expression which the First Amendment guarantees includes all modes of 'communication of ideas by conduct,' and that his conduct is within this definition because he did it in 'demonstration against the war and against the draft.'

"We cannot accept the view that an apparently limitless variety of conduct can be labeled 'speech' whenever the person engaging in the conduct intends thereby to express an idea. However, even on the assumption that the alleged communicative element in O'Brien's conduct is sufficient to bring into play the First Amendment, it does not necessarily follow that the destruction of a registration certificate is constitutionally protected activity. This Court has held that when 'speech' and 'nonspeech' elements are combined in the same course of con-

duct, a sufficiently important governmental interest in regulating the nonspeech element can justify incidental limitations on First Amendment freedoms. To characterize the quality of the governmental interest which must appear, the Court has employed a variety of descriptive terms: compelling; substantial; subordinating; paramount; cogent; strong. Whatever imprecision inheres in these terms, we think it clear that a government regulation is sufficiently justified if it is within the constitutional power of the Government; if it furthers an important or substantial governmental interest; if the governmental interest is unrelated to the suppression of free expression; and if the incidental restriction on alleged First Amendment freedoms is no greater than is essential to the furtherance of that interest." [Footnotes omitted.]

Sections 21 and 21A meet all these requirements. First, from the discussion above it should be clear that a legitimate purpose of the statute was to safeguard the health of citizens, unmistakably a traditional police power objective. Second, prohibiting the "giving away" of contraceptives is manifestly "unrelated to the suppression of free expression." Finally, the restriction on alleged First Amendment freedoms is, at best, incidental. The petitioner was not convicted for any beliefs or views that he espoused or urged upon others, nor for exercising his right of free speech or of assembly, nor for any intellectual, moral, or other opposition he may have expressed against the Massachusetts statutes in question. He stands convicted solely for "giving away" a certain contraceptive medicine or article in violation of § 21.

Petitioner next attacks the validity of § 21 on the ground that it has been so "eroded" during the past half century as to be now "constitutionally vague." Petitioner, however, overlooks the fact that § 21 was reconsidered and acted upon by the Massachusetts Legis-

lature as recently as 1966, when it inserted § 21A and amended § 21 (St.1966, c. 265, §§ 1 and 3) in order to bring § 21 into compliance with the decision of the Supreme Court of the United States in *Griswold, supra,* which had been handed down in 1965. The statutory provisions, as amended by the legislature and construed by the Supreme Judicial Court, are sufficiently clear to provide ascertainable standards of conduct and do not curtail or inhibit the exercise of individual freedoms protected by the Constitution. Cf. Baggett v. Bullitt, 1964, 377 U.S. 360, 84 S.Ct. 1316, 12 L. Ed.2d 377. The statutes are not constitutionally vague.

■ Petitioner further contends that "the prohibition of distributing found in § 21 is not severable from invalid portions of the section." The several acts prohibited by § 21 are stated in the disjunctive. Exhibiting is a distinct concept from selling, lending or giving away; and the prohibition against exhibiting can be eliminated when it conflicts with the First Amendment right of free speech without impairing the significance of the prohibition against selling, lending or giving away. The Supreme Judicial Court effectively disposes of the petitioner's contention as follows:

"The only word which is affected by this opinion is 'exhibits' as it applies to the defendant in giving the lecture. It may be constitutional in its application to others. This does not render it doubtful whether the Legislature would enact the balance of the statute, as in Pedlosky v. Massachusetts Inst. of Technology, 352 Mass. 127, 224 N. E.2d 414. In contemplation of the history of the statute, both remote and recent, we do not believe that the Legislature would prefer to have the entire statute fall if under the First Amendment the word 'exhibits' cannot stand, nor do we believe that in that circumstance they would prefer to treat as innocuous the other acts set forth in § 21:—selling or lending or giving away or offering to sell, lend or give away any of the prohibited articles."

247 N.E.2d at 579. This Court adopts this position.

Petitioner's remaining contention is that the prohibition in § 21 against the giving away of contraceptives violates "the right of privacy." For this proposition he relies on *Griswold, supra.* In *Griswold* it was held that a Connecticut statute forbidding the *use* of contraceptives violated the right of marital privacy which is fundamental and basic and within the "penumbra" of specific guarantees of the Bill of Rights. "Marriage," observes the Court, "is an association for as noble a purpose as any involved in our prior decisions." 381 U.S. at 486, 85 S.Ct. at 1682. The Court further held that the appellants, who were physicians and prosecuted for giving medical advice to married persons as to the means of preventing conception, had standing to assert the constitutional rights of the married people with whom they had a professional relationship. The use of contraceptives by married persons is not prohibited by any Massachusetts statute, and their distribution to such persons by registered physicians and pharmacists is authorized by § 21A. No violation of the right of marital privacy is involved in this case.

There is no statute in Massachusetts which makes it a crime for an unmarried person to *use* a contraceptive. Section 21, read with § 21A, however, prohibits everyone in Massachusetts, including registered physicians and pharmacists, from distributing contraceptives to unmarried persons. Another statute, Mass.G.L. c. 272, § 18, prohibits sexual intercourse between a man and an unmarried woman. The constitutionality of the latter statute is not challenged and was not litigated in the State court or in this Court.

Except as stated in the following quotation from page 3 of his Memorandum, petitioner does not specify what or

whose right of privacy is being violated with reference to unmarried persons:

"We are talking here not of the right to fornicate, not of the right to commit incest or adultery, nor of the right to be unchaste * * *; several laws exist for the prevention of these acts which are not in issue in this case. Instead, we are talking of the right of the individual to control his or her most private bodily functions."

The commission of fornication, incest or adultery necessarily involves the "most private bodily functions." All three acts are crimes under Massachusetts statutes, Mass.G.L. c. 272, §§ 14, 17, and 18. It has never been held, nor does petitioner suggest, that it is beyond the constitutional powers of the State to punish such conduct as criminal. Nor has it ever been held that a constitutional right of privacy shields acts of adultery, incest or fornication against intrusion by the State.

This Court, however, need not decide whether §§ 21 and 21A as construed by the Supreme Judicial Court violate some constitutional right of registered physicians in their professional relationship with unmarried patients, or of unmarried persons themselves. These questions are not presented by the facts in this case. The petitioner is not a physician and has no express or implied authority to act for physicians. It does not appear that he himself is an unmarried person or has any professional or other legally significant relationship to unmarried persons. Therefore he lacks standing to assert the constitutional rights of either group.

 Petitioner would have standing if a violation of his own right of privacy were involved; but in the circumstances of this case his prosecution for distributing a contraceptive substance to a person with whom he had no legally significant relationship is not an invasion of any right of privacy he can properly claim as his own.

This Court agrees with the holding of the Supreme Judicial Court that § 21 is constitutional as construed by that Court and as applied to the petitioner in the case for unlawfully giving away an article for the prevention of conception.

The Court finds and rules that the petitioner is not in custody in violation of the Constitution and laws of the United States. Therefore, in accordance with the provisions of 28 U.S.C. § 2254(a), the petition is dismissed.